GOULD (COX v.).   See Case No. 3,301.

———

## Case No. 5,637.
### GOULD et al. v. GOULD et al.
[3 Story, 516.][1]

Circuit Court, D. Massachusetts.   Oct. Term, 1844.

ADMINISTRATORS—FRAUD—LACHES—JURISDICTION —EVIDENCE.

1. Where A and B held certain valid claims for services during fifteen years against the estate of the intestate, and his administrator gave notes therefor, with the understanding, that the notes should only be good for the amount allowed by the judge of probate, and the administrator credited himself with the amount of the note given, as money paid, and the claims were fully allowed by the probate judge, and the plaintiffs being heirs, and having received their portion of the estate, after nineteen years brought this bill to set aside the allowance, as fraudulently obtained; it was held, that the proceedings by the administrator were wholly unjustifiable, but that the plaintiffs had been guilty of gross laches in not bringing their suit before, and as the parties making the original claim were dead, and as the evidence on which the court had proceeded was wholly gone, that the judgment was to be presumed as founded upon a valid claim, although personal notice had not been served upon the plaintiffs.
[Cited in Eberstein v. Willets, 134 Ill. 104, 24 N. E. 967.]

2. This court possesses full jurisdiction in equity in all cases of fraud, including fraud in ob-

[1] [Reported by William W. Story, Esq.]

taining judgments and decrees in other courts, excepting fraud in obtaining a will of real and personal estate; and has concurrent jurisdiction with the state courts in all such cases.

[Cited in Goodenow v. Milliken. Case No. 5,535; Sullivan v. Andoe. 6 Fed. 647.]

[Cited in Maloney v. Dewey, 127 Ill. 398, 19 N. E. 848; Wheeler v. Wheeler, 134 Ill. 525, 25 N. E. 588.]

3. A court of equity will never entertain a bill for relief, even in cases of asserted fraud, when the plaintiff has been guilty of gross laches and unreasonable delay.

[Cited in Holden v. Meadows, 31 Wis. 289; Kobiter v. Albrecht, 82 Wis. 66, 51 N. W. 1124.]

4. To found a claim for relief in equity, it is not sufficient for the plaintiff to raise suspicion of bad faith, but he must establish it beyond reasonable doubt.

[Cited in Gindrat v. Dane. Case No. 5,455.]

[Cited in Oliver v. Oliver, 119 Ill. 533, 9 N. E. 891.]

5. An answer responsive to allegations in a bill in equity, is positive evidence, and to be taken as true, unless disproved by the testimony of two credible witnesses, or of one credible witness and facts entirely equivalent to and as corroborative as another witness.

[Cited in Jewett v. Cunard, Case No. 7,310; Tufts v. Tufts, Id. 14,233.]

6. A deposition in perpetuam, which has not been recorded according to the law of the state where it is taken, is not competent evidence in the courts of the United States.

[Cited in Sheldon v. Rockwell, 9 Wis. 183.]

Bill in equity. The bill sets forth in substance, that the plaintiffs [Daniel Gould and others] are the only surviving children of Nathan Gould, deceased, who was one of the brothers of Jacob Gould of Stoneham, in the county of Middlesex and commonwealth of Massachusetts, yeoman, deceased, intestate; that their said father, Nathan Gould, died in November, A. D. 1816; that their said uncle, Jacob Gould, died on the nineteenth day of November, A. D. 1819, leaving considerable real and personal estate, intestate and without issue; that the plaintiffs, together with their sister Mary Towle, wife of one Laban Towle, both now deceased without issue, and Thomas Gould and David Gould, 2d, brothers, and Mary Gould, Susanna Converse, and Elizabeth Knight, sisters of said Jacob, were his heirs at law; that the said Mary Towle is now deceased, intestate, without issue, and leaving no father surviving; that the plaintiff, the said Abigail Gould, widow of the said Nathan Gould, is the mother of said Mary Towle, and, as such, is one of her heirs and legal representatives, and entitled to a distributive share of the estate, real and personal, of the said Mary. That at the time of the decease of their said uncle, Jacob Gould, the plaintiffs were out of this commonwealth, and resident in distant parts of the United States; and that they have so continued to reside until the filing of this bill of complaint, except that the plaintiff, David Gould, removed to the state of New Hampshire from the state of Ohio, in the year 1823, where he has since resided. That

on the twelfth day of February, A. D. 1820, Thomas Gould, Junior, of Stoneham, aforesaid, yeoman, a nephew of said Jacob, obtained from the judge of probate for the said county of Middlesex, letters of administration on the goods and estate of said Jacob Gould, and by virtue thereof possessed himself of the same. That on the nineteenth day of April, A. D. 1820, the said administrator returned into the probate office, for the said county of Middlesex, the inventory of said estate, amounting to $3650.00 in real estate, and $657.00 in personal estate. That on the first day of June, A. D. 1820, the said administrator settled his first administration account with the said estate. That on the fourteenth day of February, A. D. 1821, the said administrator settled his second administration account with the said estate, and claimed allowance for the following items among others: To David Gould, Jr., $1276.00; to Mary Gould, on account, 866.00. That on the twenty-first day of February, A. D. 1821, the said administrator petitioned the said judge of probate for leave to sell real estate for the payment of the balance due to him, as by his account last recited, and filed a list of debts to the amount of $2966.12: whereupon the said judge decreed a sale of the real estate to the amount of $2151.29. That on the twenty-ninth day of May, A. D. 1821, the said administrator filed his affidavit of sale, whereby it appeared that the sales of the said real estate amounted to $2201.29, the said David Gould, Jr., becoming the purchaser. That on the twenty-first day of August, A. D. 1821, the said administrator settled his third administration account with the said estate.

And the plaintiffs further show, that the item of fifteen hundred and seventy-six dollars, charged by the said administrator in his second administration account as paid to David Gould, Junior, and the other item of eight hundred and sixty-six dollars, charged therein as paid by him to said Mary Gould, were never, in fact, due to them from the estate of said Jacob Gould, but that they were fictitious and fraudulent claims against the estate aforesaid, which the said administrator fraudulently allowed, with a secret unlawful understanding between the said administrator and the said David Gould, Junior, and Mary Gould, that if the said administrator would permit said David, Junior, by means of such fictitious claims, to possess himself of the homestead farm of the said Jacob Gould, the intestate, and would settle the estate according to their, the said David, Junior, and Mary's wishes, the said David, Junior, would devise the said real estate to the said administrator on his decease, and the said Mary would make her will in favor of other heirs of the said Jacob, the intestate, whom it was desirable to conciliate to this fraudulent arrangement. That the said administration accounts were allowed and adjudged by the said judge of probate, and

were not resisted by the plaintiffs, and other heirs, at the time of such adjudication, and have been suffered to remain undisturbed and without examination from thence hitherto, for divers strong and controlling reasons and obstacles, to wit: first, because the plaintiffs then were, and for a long time have been, resident in far distant parts of the United States, and had but little communication with their relatives in this commonwealth; secondly, because the plaintiffs had no personal legal notice of the proceedings in the said probate court; thirdly, because the plaintiffs have been in poor circumstances, and unable to sustain the expenses of an investigation into the said proceedings and doings of the said administrator; fourth, because of the fraudulent bribes, solicitations, and promises made and offered to some of the other heirs then in this commonwealth, who might have resisted the said accounts and charges by the said David, Junior, and Mary, and the said administrator; and because of the fraudulent understanding between the said administrator and the said David, Junior, and Mary, concerning the settlement of the said estate; inasmuch as in particular the said Mary Gould, in order to suppress all opposition to this arrangement, promised the said Susanna Converse and Jesse Converse, her husband, to make her will in their favor, if they would not object to the said accounts and charges, and the said David, Junior, promised to give to Thomas Gould, Senior, the father of said administrator, a certain wood-lot, if he would not object, and the said David, Junior, and Mary, offered to said Nathan Gould, a brother of the plaintiffs, (who is now resident in the state of New Hampshire, and cannot be made a party defendant to this bill, and refuses to become a party plaintiff herein), money, if he would not object to their charges, and the said Mary promised to remember him in her will, and he thereupon withdrew the opposition which he had prepared and intended to make, and suppressed the evidence which he had discovered against the validity of the said accounts and charges; of all which the plaintiffs have only been recently informed and could not at the time have known. That among other evidence known to the said Nathan Gould, and also known to the said administrator, and the said David, Junior, and Mary, and which ought to have deterred the said administrator from allowing and paying the said claims, and is proof that the said administrator colluded with the said David, Junior, and Mary, in the allowance of their said claims, and which they induced the said Nathan to suppress, were the facts, that the said Jacob Gould, a short time before his decease, had declared to one William Abbott, that he, the said Jacob, had settled with the said David, Junior, and Mary, and did not owe them five dollars, and that he did not owe five dollars in the world, which declarations and other similar ones the said Jacob had repeatedly made to and in the presence of the said administrator.

And the plaintiffs further show, that the said David Gould, Junior, deceased, in the year 1834, and, in pursuance of the agreements and understandings above set forth, devised to the said administrator, Thomas Gould, Junior, the real estate of which he had so possessed himself, in fraud of the other heirs of Jacob Gould; that the said Mary Gould, in pursuance of the agreements and promises she had made, being part of the same collusive arrangement, on her decease, in the year 1836, bequeathed to said Nathan Gould one hundred dollars, and the residue of her property to Jesse Converse, Junior, son of said Jesse and Susan Converse, except a few hundred dollars, which the said Jesse, Junior, advised her, in order to prevent suspicions, to distribute among her other nephews, nieces, and cousins; and that the said David, Junior, Mary, and the said administrator, made, and carried into effect divers other agreements, arrangements, and bargains, with and among each other, and with and among other heirs of the said Jacob Gould, not the plaintiffs, in pursuance of the fraudulent design, formed at the beginning, of procuring the allowance of the said David, Junior, and Mary's charges against the said Jacob's estate, and of enabling the said David, Junior, thus to possess himself of the real estate of said Jacob, to the prejudice and exclusion of other heirs. And the plaintiffs further show, that being entitled, as heirs of said Jacob Gould, to the said Nathan Gould's distributive share of his estate, they have frequently, by themselves and by their agents, applied to the said administrator, and requested him to come to a full and true account with the plaintiffs for the estate and effects of the said Jacob, and to bring into the general fund of the said estate, the sums so fraudulently charged, as paid by him to the said David, Junior, and Mary, and to pay to them their respective just shares thereof, and to surrender, for division among the heirs of said Jacob, the real estate, of which he now claims to be the owner, under the will of said David, Junior;—with which just and reasonable requests the plaintiffs hoped the said Thomas Gould, Junior, would have complied. But now so it is, may it please your honors, that the said Thomas Gould, Junior, administrator, as aforesaid, absolutely refuses to open and correct his administration accounts, or to bring into the general fund of the said estate the sums so fraudulently charged by him, or to pay to the plaintiffs their just shares thereof, or to surrender for distribution the said real estate, of which he claims to be the owner, under the will of said David Gould, Junior; and the said defendants pretend that the moneys, so charged by the administrator, as paid to said David, Junior, and Mary,

were true and proper charges against the estate aforesaid, and that the same were due in full: Whereas the plaintiffs charge the contrary thereof to be the truth; and so it would appear, if the said defendants would set forth, as they ought to do, all the agreements and doings which transpired, at the time before, and when the said several proceedings on the estate aforesaid, were had before the said judge of probate.

The answer of Thomas Gould (which was adopted by the other defendants, who made answer to any of the material facts), was in substance as follows: That the said Jacob Gould died seized of certain real and personal estate, and that his heirs were his brothers and sisters, together with the children of those who had died, as set forth in the bill. That he was informed and believed that all the complainants then resided out of the state, and still continue to do so, except the complainant and Gould, who in the year 1822 returned to Stoneham and there resided many years. That he was duly appointed administrator, and accepted and acted under the appointment, and returned his first account as administrator on April 25th, 1820, and his second account on January 11th, 1821; and that notice was, pursuant to an order of the probate court, served upon the heirs at law and creditors, to appear and show cause, if any they had, against the allowance of the said account. That he afterwards obtained leave from the court, after notice to the heirs and creditors at law, to sell so much of the real estate as might be necessary to raise the sum of $2170.29, and that the said David Gould, Junior, and Mary Gould were the purchasers thereof. That on June 23rd, next ensuing, the defendant filed his third account, which was allowed by the said court, after due notice had been served on the parties interested. The defendant denies that the said sum of one thousand five hundred and seventy-six dollars, so by him charged in his said second account, as paid to the said David Gould, Junior, and the sum of eight hundred and sixty-six dollars, so by him charged in his said account, as paid the said Mary Gould, were, so far as he knew, was informed or believed, not in fact due to said David and Mary respectively, from the estate of said Jacob Gould, deceased, or that the same were fraudulent or fictitious claims against the said estate; on the contrary, this defendant further answering, says, that it was well known to him, this defendant, that both said David Gould, Junior, and said Mary Gould, had for many years lived on the farm of, and with the said Jacob Gould, and had been by him employed, and had rendered him services of great value, and which were by the said Jacob stated to this defendant to be of great value and importance to him the said Jacob. And this defendant further answering, says, that after the decease of said Jacob,

the said David Gould and the said Mary Gould did present to him, as administrator as aforesaid, their respective accounts and claims against the estate of said Jacob, which original account this defendant here produces and annexes, marked K and L, and prays that the same may be taken as part of this his answer. And this defendant believed the same to be fair and just claims against said estate; but this defendant being unwilling, and believing it to be improper to allow the same upon his own judgment, and without notice to, and the consent of, the heirs and other parties interested in said estate, or unless the same should be established, upon a hearing and proof thereof, before the court of probate for said county of Middlesex, did so notify the said David and the said Mary, and did decline to pay the same. That thereafterwards, the said David and the said Mary, having respectively procured the written consent and approbation of a portion of the heirs of said estate, most largely interested in disputing the said accounts and claims, authorizing the allowance of the same by this defendant, the defendant did thereupon consent and agree to and with said David and Mary respectively, to pay and allow the said claims, provided the sum should be approved and allowed by the court of probate of said county, after a hearing and notice to all parties interested, there to show cause for or against the same; and this defendant thereupon, for the purpose of presenting said claims for adjudication to the said court of probate, and under the belief that the proper mode of so doing would be to charge the same in an account of his administration of said estate, he, this defendant, being unaccustomed to the course of proceedings in said court, did, on the tenth day of January, in the year of our Lord one thousand eight hundred and twenty-one, agree to and with said David and Mary respectively, to give, and did give, to each of them his promissory note for the amount of their respective claims, and did take from said David and said Mary respectively their obligations to give up and restore said notes, or reduce the respective amounts thereof, in case they, said David and Mary, should fail to prove, support and procure to be allowed, in whole or in part, their respective claims against said estate, upon a hearing thereof before said probate court, to be had after notice as aforesaid, and the respondent did thereupon, on January 11th, present to the said probate court, for hearing and allowance, his said second account, as administrator of said estate as aforesaid, and in said second account did insert and charge said claims and accounts of said David and the said Mary respectively; and this defendant did, at the time of presenting his said second account to said court of probate, exhibit to the said court, the said respective accounts of the said David and Mary as afore-

said, and did state and explain to said court the circumstances under, and the manner in, which the same had been so entered in his said account; and the said court thereupon, on the same eleventh day of January, did direct an order of notice to be issued to all persons interested, and to be served in the manner hereinbefore set forth, returnable on the fourteenth day of February, then next as aforesaid. That at a probate court, holden on the said fourteenth day of February, the said order of notice was returned, duly served as aforesaid; and thereupon the said Nathan Gould, the brother of said complainant, did appear before said court, and the said accounts and claims of the said David Gould and the said Mary Gould were exhibited, and the said Nathan Gould did object to the allowance of the same, or any part thereof; whereupon the said court of probate did proceed to hear and examine the proofs of the respective parties for and against the said claims and the allowance thereof, and the said David Gould and Mary Gould did then produce witnesses and proof in support of their respective claims; and the said Nathan Gould, on his part, did produce testimony to the said court, to defeat or diminish the amounts of said respective claims of said David and Mary, and to prevent the allowance thereof, all which were heard and considered by said court; and the said court did thereupon decree that the said respective claims and accounts of the said David and Mary be allowed, and that the said respective accounts, and the receipts thereto, be accepted and recorded, and that the original thereof, when recorded, be delivered back to this defendant; and the said court of probate did thereupon, on the said fourteenth day of February,—by a decree reciting, that due notice had been given to all persons interested in said estate, and that said Nathan Gould appeared and objected thereto, and that the parties were fully heard,—order that said accounts of this defendant be approved and allowed, and that the same be recorded accordingly.

The defendant denies that the said accounts were allowed or paid fraudulently, or with a secret unlawful understanding between him and the said David Gould, Junior, and Mary Gould, or either of them, that if he, this defendant, would permit the said David Gould, Junior, by means of said claims, to possess himself of the homestead farm of said Jacob Gould, deceased, and would settle said estate according to the wishes of said David and Mary, the said David Gould, Junior, would, at his decease, devise said estate to this defendant, and that the said Mary would make her will in favor of other heirs of said intestate, whom it was desirable to conciliate to said alleged arrangement, as in said bill most wrongfully set forth; or that said claims of said David and Mary, or either of them, were allowed and paid by this defendant in consequence of, or in pursuance of, any other or similar, secret or unlawful understanding whatever; or that any understanding or agreement, expressed or implied, of any kind whatever, in relation to said claims of said David and Mary, or either of them, or the allowance or payment thereof, ever existed, or was known to, or heard of by this defendant, other than is hereinbefore set forth by this defendant. And the defendant further answering, admits that the said administration accounts of this defendant were allowed by the said court of probate as aforesaid, without resistance by said complainants, or by most of the other heirs of said intestate, but this defendant doth deny that the same were not resisted by any of said heirs; on the contrary this defendant doth aver, that the allowance of the said second and principal account of this defendant was earnestly resisted by the said Nathan Gould, the brother of said complainants, and in the manner hereinbefore set forth.

And the defendant admits that all of the said complainants, except the said David Gould, have been, since the allowance of the said accounts as aforesaid, resident in distant parts of the United States, but whether said complainants have had little or frequent communication with their relatives in the commonwealth, this defendant doth not know, and is not informed; but as to the complainant, the said David, this defendant doth deny, that he has been resident for a long time in far distant parts of the United States; on the contrary, the defendant avers that the said David, on or about the year 1823, returned to this commonwealth, and there remained, as the defendant believes, until about the spring of the year 1832, when he removed to the state of New Hampshire, and that from and after his return, to this commonwealth, until his said removal to New Hampshire, said complainant did, for much the larger portion of said time, live with him at Stoneham. And the defendant denies, that the said complainants had not legal notice of said proceedings in said probate court, in the manner and to the extent hereinbefore set forth; but whether the said complainants, or any of them, had or had not actual notice of the same, or of any, and if any, of what part thereof, the defendant doth not know, and cannot set forth. And the defendant further answering, saith, that he doth not know, nor is he informed, of the true and actual pecuniary circumstances of said complainants, or of their abilities to sustain the expenses of any investigation of his (the defendant's) doings, as such administrator; but this defendant is informed, and believes that the father of said complainants died seized of certain real estate and buildings thereon in the said state of Ohio; and this defendant is informed, and believes, that said complainants, as heirs of said Jacob, did receive from said David Gould, Jr., several hundred dollars upon the assignment to him, said

David, of the residue of the real estate of said Jacob, in the proceedings for partition before said probate court, as hereinbefore set forth. And the defendant further answering, doth utterly deny that any fraudulent bribes, solicitations, or promises, of any kind whatever, were by him, the defendant, or so far as the defendant knows, is informed, or believes, by the said David Gould, Jr., and the said Mary Gould, or by either of them, ever made or offered to any of the heirs of said Jacob Gould, deceased, in or out of this commonwealth, or to any other person or persons whatever, to induce said heirs or persons, or either of them, to consent to the allowance of any of said accounts of this defendant, or not to resist the allowance thereof, or for any other or similar purpose, or in any way or manner whatever. And the defendant denies that the said Nathan Gould did, by reason of said alleged promises, or for any other reason, withdraw any opposition which he had intended to make to said charges of said David and said Mary, or either of them, or to said account of this defendant, or that said Nathan, so far as the defendant knows or is informed, suppressed any evidence against said accounts and charges; on the contrary, he says, that the said Nathan did not at any time withdraw his said opposition to said charges and accounts, but did produce all such testimony as he saw fit against the same, and the same was heard by said probate court; and that the said Nathan did, as this defendant believes, and as is recited in said decree of said probate court, resist the allowance of said claims and accounts, until the decree so made in the premises as aforesaid.

The defendant further says, that at the said trial and hearing, so had before said probate court, on the said fourteenth day of February, as aforesaid, said Nathan Gould did produce and offer the said William Abbott as a witness to sustain his objection to the allowance of said claims, and to said account of the defendant; and the said Abbott was accordingly sworn and examined at said hearing, and did then and there testify, as nearly as the defendant can recollect, that the said Jacob Gould, shortly before his decease, declared in his presence, that he did not owe any person any thing; and he may also have testified, though the same is not recollected by the defendant, that the said Jacob also declared, that he had settled with the said David and said Mary, and did not owe them five dollars. And the defendant further answering, says, that he doth not believe, and cannot believe, that said Jacob did, in fact, make any such declarations in the presence of or to the said Abbott, as are in the said bill alleged, because of the said declarations so repeatedly made by the said Jacob, in the presence of the defendant, as aforesaid, and because in addition to the said claims of the said Mary for services contained in her said account, a few months prior to his decease, a settlement was had by

and between the said Mary and the said Jacob, in the presence of the defendant, concerning certain promissory notes of the said Jacob, by him long previously given to the said Mary, towards her share of her father's estate, which had been received by the said Jacob, and which notes were then held by the said Mary, and the said Jacob then and there gave to the said Mary his two other promissory notes, amounting to about one hundred and seventy dollars, in payment of the balance due her on said notes first mentioned, which notes were afterwards paid to said Mary by the defendant, as administrator of the said Jacob, and are charged in his said administration account, hereto annexed; and the said Jacob was also indebted to various other persons, in sundry amounts, at the time of his said decease, which sums have since been paid by the defendant, and are charged in his said administration account. And the defendant further answering, says, that the said Mary Gould died in or about the month of November, in the year of our Lord one thousand eight hundred and thirty-six, testate, and as the defendant is informed and believes, devised a part of her estate to Jesse Converse, Junior, the child of her said sister Susanna Converse, and parts and portions of her property to and among her nephews and nieces, but in what proportion said estate was in and by said will devised, or the precise contents of said will, the defendant never having seen or read the same, or heard the same read, and having no interest therein, cannot set forth.

And the defendant denies that the said devise and bequest of the said Mary Gould to said Jesse Converse, Junior, or any other of said devises and bequests in the said will of the said Mary contained, were made in pursuance of any agreement and promises made by her, or as part of any collusive arrangement by her entered into, at any time, with the defendant, or to which the defendant was a party, or that any such or similar agreements, promises, or collusive arrangements as are in said bill set forth, were ever made with the defendant, or with any other person or persons whatever, to the knowledge, information, or belief of the defendant, or that the said Mary was, so far as the defendant knows or believes, or ever has heard, advised by the said Jesse Converse, or by any other person or persons whatever, to devise or bequeath any part of her estate to her other relatives and nieces, to prevent any suspicion, or for any other purpose whatever. And the defendant further denies, that the said David Gould, Junior, the said Mary Gould, and the defendant, or either of them, so far as he knows, is informed, or believes, made or carried into effect, at any time, any other agreements, arrangements, or bargains to and among each other, or with and among the other heirs of the said Jacob Gould, deceased, in pursuance of any fraudulent design, form-

ed at the beginning, or at any other time, of procuring the allowance of the said charges of the said David, Junior, and the said Mary, or either of them, against the estate of the said Jacob Gould, and of enabling the said David Gould thereby to possess himself of the real estate of the said Jacob, to the prejudice and exclusion of the other heirs of the said Jacob, or for any other or similar purposes, or that any agreements or arrangements of any kind were ever made by the defendant, or with the knowledge of this defendant, by the said David and the said Mary, or either of them, of the character stated in said bill of complaint, or in any way similar thereto, or in any manner relating to the allowance of the said claims and charges of the said David and the said Mary, or either of them, or to the obtaining possession, by the said David, of the real estate of which the said Jacob died seized, or any part thereof. And the defendant further denies, that at the time he charged in his said second account of his said administration, the said sums, so due to and claimed by the said David Gould, Junior, and the said Mary Gould, as aforesaid, or at any other times, he either knew, or believed, or suspected, or had reason to know, believe, or suspect, that the said Jacob Gould did not owe the said David Gould and the said Mary Gould the said sums so claimed by them, respectively, or that he, the defendant, a short time previous to the decease of the said Jacob, or at any other time, heard the said Jacob say, that he did not owe either the said David or the said Mary one cent, or any other sum, or that he, the said Jacob, did not owe five dollars in the world, or any other similar declarations; and the defendant has already, in this, his answer, set forth all that he recollects to have heard the said Jacob say, within the then last years of his, the said Jacob's life, respecting his debts. That both the said David Gould and the said Mary Gould, did, in support of their said claims against the said estate of the said Jacob, produce and exhibit to the defendant, books of account, in which their said claims against the said Jacob Gould were entered, and, according to the best recollection of this defendant, said charges were, and appeared to be, annually entered and charged by said David and Mary, respectively, in their said books; and the defendant did require of the said David and the said Mary, that the validity and amount of their said claims should be proved to, and allowed by, the said probate court, in the manner hereinbefore set forth. That he believes the said accounts and claims of the said David and the said Mary, to be just and fair, and having no reason to doubt the validity of the same, he did not, and could not communicate to said judge of probate any facts or reasons to doubt the validity thereof, but did submit the whole matter to said judge of probate, upon the testimony produced by the respective parties, as hereinbefore set forth. And the defendant denies, that the said Nathan Gould was induced, by any promises, offers, or solicitations, made by the defendant, or by any other person or persons, with his knowledge, to go home from the said probate court, and not object to the allowance of said accounts, or the claims of the said David and Mary, or that any promises, offers, and solicitations, of any kind, were ever, to the knowledge, information, or belief of the defendant, made to said Nathan Gould, to induce him, the said Nathan, to relinquish his said objections, or to go home from said probate court; on the contrary, the defendant answering, says, that the said Nathan Gould, so far as he, the defendant knows, is informed, or believes, did insist on his said objections to said accounts and claims of the defendant, and of the said David and Mary throughout, and was fully heard therein by the said court, and did not forbear, waive, or relinquish the said objections, but insisted on a decree of said court upon the same, and said decree was made accordingly by the said court, in the manner hereinbefore set forth.

R. H. and E. T. Dana, for plaintiffs.
Sidney Bartlett, for defendants.

STORY, Circuit Justice. It can scarcely be denied that there are some suspicious circumstances in the present case, which cast upon it a shade of doubt. It appears that Jacob Gould, the intestate, died in 1819, (by murder), leaving an ample personal estate for the payment of all his debts, except the two debts now in controversy, one asserted to be due to David Gould, Jr., (his brother), amounting to $1576, and the other asserted to be due to Mary Gould, (his sister), amounting to $866. The defendant, Thomas Gould, Jr., (the son of another brother), took administration upon the estate of Jacob Gould, in February, 1820, and in his second administration account, rendered to the judge of probate in February, 1821, he represented himself to have paid the said sums in cash to David Gould, Jr., and Mary Gould, and charged the estate therewith, accordingly. In point of fact, he had not paid the same; but had only made a formal settlement with them, and given his notes for the amount, with an understanding, that the notes should stand good against him, only for the amount which should ultimately be allowed by the judge of probate, as due to them. This was certainly an extraordinary proceeding, and utterly unjustifiable. It could scarcely have been resorted to, except for the purpose of escaping from a trial at law, of these contested claims, in the presence of the whole county. The proceeding does not appear to have been made known to the judge of probate, or the true state of the facts brought to his notice. If it was not, then it must have operated as a surprise upon his judg-

ment, and led him to less scrutinizing and jealous inquiries than he would otherwise have bestowed upon the claims. I do not stop to inquire, whether the judge of probate had jurisdiction to examine and finally to settle unliquidated claims like the present, which from their very nature and character are open to controversy. But I may say with all due respect, that in a case circumstanced like the present, where the real estate of the intestate was to be sold for the discharge of these claims, it would have been a far more satisfactory mode of proceeding, for the judge of probate to have sent the case to be decided, in the first instance, by a trial and judgment at law. What was the nature of these claims? It seems, that both of the claimants had lived with the intestate for many years, and, while living with him, were maintained by him. The debt of David Gould, Jr., was, with the single exception of one item of $11 for money lent, for services rendered from April, 1806, to November, 1819, and all the services were charged in general terms, "for services rendered in farming," annually, from the 1st of April, 1807, down to the 1st of April, 1819, at $112 per annum. The account of Mary Gould was "for keeping house" for the intestate, from the 1st of April, 1803, to the 25th of November, 1819, at $1 per week, being charged at the rate of $52 per year.

Now, there is no direct evidence whatsoever, before this court, that there was between the intestate and either of these claimants, any agreement for the payment of wages, during any portion of this long period, or any acknowledgment by the intestate, of any unliquidated debt, for these services, owing to them by him, or any account rendered to him, or recognized by him, during this whole period, extending from twelve to fifteen years. This very circumstance was calculated to excite some notice and to call for some explanation; especially as it would have been the duty of the administrator, in the absence of all controlling proofs, to have interposed the bar of the statute of limitations, as well as to have contested the general validity of the claims. It does not appear what was the exact evidence before the judge of probate, to establish these claims; and indeed, it can scarcely be supposed that those proofs are now within the memory of the parties, so as to enable this court to see their full bearing and strength. The general rule certainly is, that the acts of a court of justice are to be presumed to be rightfully done, according to the maxim, "Omnia rite acta presumentur." The case, however, would have been much stronger in favor of the presumption, so far as the administrator and the claimants, then before the court, are concerned, if all the other heirs had been present at the hearing; or had had personal notice to attend the hearing, and had neglected to do so; or if the claims were shown to have been then bona fide contested with all the zeal, and, earnestness, and vigilance of persons having an adverse interest, which they were resolutely determined to support for themselves and all the other heirs having a similar interest. But, in point of fact, the present plaintiffs lived, at the time, in distant states of the Union; they had no personal notice of the claims, or of the presentment thereof for adjustment, before the judge of probate. The only person, who appeared to contest the claims, was Nathan Gould, a brother of the female plaintiffs, and he appeared without counsel; and if his own statement, given in his deposition in this case, is to be credited, (and it is certainly open to very grave objections, in point of credit), he himself withdrew his opposition upon an agreement made and negotiated between himself and the claimants, with the knowledge of the administrator, by which he was to receive a pecuniary compensation. In short, it was, according to his statement, a bargain for hush-money, ex turpi causa.

Independent, however, of the serious objections to the testimony of Nathan Gould, founded upon his supposed want of veracity, and his general reputation, there are some other circumstances, which go greatly to diminish its force and credibility. The intestate died leaving two brothers and two sisters living, and the children of one brother and one sister, deceased, who were entitled to share in the distribution of his estate. It was, therefore, divisible into six parts, of which the plaintiffs claim (with Nathan Gould, their brother), only one sixth. When these contested claims were before the judge of probate for allowance, the surviving brothers and sisters, not interested in the claims, made a written statement, that they had seen and examined the account, and agreed to allow the same. So that, in point of fact, the claims were admitted by the heirs of three-sixths, and were then and are now contested by the heirs of one-sixth only. Now, the bill charges, that the settlement and allowance of the claims were procured by a fraudulent agreement and conspiracy between the administrator and all the heirs, except those concerned in the sixth represented by the plaintiffs, and, of course, with a design to defraud the plaintiffs of their proper share in the intestate's estate. This is a very grave charge; and certainly ought to be made out by strong and satisfactory proofs. In the first place, it is to be considered, that it is brought forward, for the first time, about nineteen years after the settlement of the claims in and by the probate court. In the next place, all the parties asserted to have been engaged in the transaction, except the administrator and the husband of Mrs. Converse, (one of the sisters of the intestate), are now dead. If the claimants of these debts, Daniel Gould, Jr., and Mary Gould, were now living, there ought to be ample means yet remaining to estab-

lish these claims, and, at all events, they could be called upon to explain all the circumstances upon which their claims were founded. In the next place, the answer of the administrator pointedly and explicitly denies all the allegations in the bill, in respect to the fraud and conspiracy charged in the bill; and the answers of all the other defendants do, in effect, either positively adopt, or impliedly admit the truth of the statements of the administrator. Now, each of these considerations is of great importance in a case circumstanced like the present. The plaintiffs apply for relief in a case asserted to be of fraud in the settlement of a probate account nearly nineteen years ago. That this court is competent in point of jurisdiction to grant relief in such a case, if fully made out in proof,—notwithstanding similar relief may be attainable in the state court,— is a matter upon which I entertain no doubt. This court possesses full jurisdiction in equity, in all cases of fraud, including fraud in obtaining judgments, and decrees, in other courts; and is not limited in its exercise to cases, where, by the state laws, no relief can be granted by the state courts. The jurisdiction is concurrent with the state courts in all such cases. I know of but a single exception, which has been allowed, and that is, fraud in obtaining a will of real or personal estate, which has already been held to be exclusively examinable and triable in the proper court, having jurisdiction in the premises, whether it be a court of common law, or an ecclesiastical court. See 1 Story, Eq. Jur. §§ 184, 238, 440, and the cases cited in the notes Id. See, also, Allen v. Macpherson, 5 Beav. 469; on appeal, 1 Phil. Ch. 133; Smith v. Spencer, 1 Younge & C. Ch. 75. Even this exception, has been thought to stand more upon authority than upon principle. In the case of Gaines v. Chew, 2 How. [43 U. S.] 619, 645, the supreme court of the United States said: "In cases of fraud, equity has a concurrent jurisdiction with a court of law; but in regard to a will, charged to have been obtained through fraud, this rule does not hold. It may be difficult to assign any very satisfactory reason for the exception. That exclusive jurisdiction over the probate of wills is vested in another tribunal, is the only one that can be given." But of the jurisdiction of a court of equity to relieve in cases of fraud in the settlement of probate accounts, it does not appear to me, that there is any reasonable ground to entertain a doubt. In the case of Pratt v. Northam [Case No. 11,376], I had occasion fully to consider and act upon the matter. But how do the plaintiffs account for their delay in bringing the present suit? A court of equity will never entertain a bill for relief, even in cases of asserted fraud, if the plaintiff has been guilty of gross laches or unreasonable delay. The present suit was brought more than twenty years after the death of the intestate. His death could

not but have been known to them, as it was a case of murder of no ordinary celebrity. Indeed, the plaintiffs do not pretend to any ignorance of that fact, nor even that administration had been taken upon his estate. David Gould (one of the plaintiffs), although at the time out of the state, afterwards came and resided within it for a number of years, and then removed to New Hampshire. Now, why did he not, when he resided within the state, make examination and inquiries into the validity of these claims? They were spread at large upon the probate records, and might then have been examined, and, if fraudulent, an application might have been made to the probate court to re-examine, and annul them. No such application was then made.

Supposing that David Gould did not communicate any facts to the other plaintiffs, touching the existence or allowance of these claims in the probate settlement, a supposition, which ought not to be lightly indulged, still, as the plaintiffs must have known, that administration had been taken upon the intestate's estate, they had ample means within their power, at a very early period, to ascertain from the probate records the amount of his real and personal estate. If they did not choose to institute any such inquiries, but lay down in indolent indifference, they have no right to ask a court of equity, at a great distance of time, under a great change of circumstances, to supply their want of negligence. It is said, that they were poor, and lived in distant states. Be it so; but the means of communication and inquiry, without any serious expense, were then within their reach; and if so, they were bound to make due inquiries, and act upon the results within a reasonable time. Suppose they had made such inquiries, and ascertained the facts of the allowance and settlement of these claims in the probate court, would their poverty, or distance, have constituted of themselves a sufficient ground for a court of equity, fifteen or eighteen years afterwards, to re-examine the validity of these claims? Or would they have not been required, with reasonable diligence, to have followed up these inquiries by some legal proceedings? Would they have had a right to lie by, until, by lapse of time, and the death of parties, great obscurity must necessarily have been thrown over the original transactions, and greatly impaired the proofs to justify them? Besides; after the administrator's sale of a portion of the real estate of the intestate, under the authority of the probate court, in 1821, a partition of the residue of his real estate was made in the same year, under the authority of the same court, and the plaintiffs, upon that division, had awarded to them for their share or owelty of partition a sum of money, which their own witness asserts to have been paid, and received by them. Certainly, under such circumstances, they were put upon inquiry, what was the true amount of their shares,

and what had been the disposition made of the residue of the intestate's estate. Why was no inquiry then made? It is said, that the plaintiffs then had no knowledge of the secret fraudulent agreement and conspiracy, and that it has come to their knowledge only within a recent period. And from whom does the information now come? From their own brother, Nathaniel Gould, admitting himself to be a participator in the fraud, if, indeed, he was not the dux facti. And when does he make the discovery? Upon their own showing, after most of the parties interested were in their graves, when, if his statements were false, they were far less liable to detection and overthrow by opposing proofs. The claimant David Gould, Jr., died in 1834, and the claimant Mary Gould, died in 1836. If they had been living, they might have satisfactorily established the validity of their own debts; and, at all events, might have disproved the asserted fraud and conspiracy. Thomas Gould too, if living, might have disproved the fraud and conspiracy, in which he is asserted to have been a party and an actor. But he, also, is dead. So that we see, that the bill is now brought after a great change of circumstances; and it seeks to charge the dead, as well as the living, with co-operation in a base and deliberate fraud. It seeks, if one may venture upon the bold figurative expression of an eminent judge, to make men sin in their graves. Now, under such circumstances, it is plainly the duty of the court, to require the most full and satisfactory proofs, that there was such a fraud and conspiracy as the bill charges, and that the debts brought forward by David Gould, Jr., and Mary Gould, were wholly fictitious, and unfounded in fact. It is not sufficient to raise suspicions of bad faith, from the doubtful character of the claims. The plaintiffs must go farther; they must establish the truth of the charge beyond any reasonable doubt, and by evidence, not only competent but credible. Fraud is never presumed, even against the living; and a fortiori never against the dead, whose presence cannot be demanded to meet and falsify the charge. The onus probandi then is upon the plaintiffs to make out the case, omni exceptione major. Have they so done?

It is a perfectly well settled rule in equity, that an answer, responsive to the allegations of the bill, is positive evidence for the defendant, and is to be taken as true, unless disproved by the testimony, of two credible witnesses; or by one credible witness and facts entirely equivalent to, and as corroborative as another witness. In the present case, the principal defendant, Thomas Gould, Jr., has in the most direct and positive manner denied all the charges of fraud and conspiracy stated in the bill. He is supported by the concurrent answers of all the other defendants, not one of whom contradicts, or impugns, or denies the truth of his answer. What, then, is the evidence in support of the bill? First; it is said, that the debts are in themselves of a suspicious character, under the circumstances. It does not follow, that they may not, nevertheless, have been entirely well founded; for though open to suspicion and inquiry, they are not of a character, which stamps upon them either falsity, or incredibility. They are just such as may have arisen, and from the entire personal confidence between the people, in the near relation in which they stood to each other, none but the members of the family might know, or be presumed to know of their existence. Then as to the positive testimony to contradict the answers. The main reliance, if not the exclusive reliance, is upon the deposition of Nathaniel Gould, and the deposition of Ebenezer Buckman. As to the former, it is impossible not to feel, that he stands in a very peculiar predicament. It does not strike me, that he is incompetent in point of interest. But his testimony labors under very grave difficulties. The opposing testimony against his credibility is so strong, that it seems shaken to its very foundation; and then again, he comes confessedly to testify to his own turpitude. The maxim of the Roman law, allegans suam turpitudinem non est audiendus, seems to have been transferred into our law, at least to the extent of taking from such testimony, standing alone, all its intrinsic force and efficiency. Branch, Max. p. 10; 4 Co. Inst. 279. Then as to Buckman's testimony. It was not taken in this cause; but it is a deposition taken in perpetuam rei memoriam before state magistrates, under the statute of Massachusetts. Rev. Acts Mass. c. 94, p. 574, §§ 34–37. It has not been recorded within the time prescribed by law; and therefore is not, according to the terms of the statute, admissible in evidence as a deposition. This is not denied; but then it is said, that it is offered, not as a deposition, but as proof of what a deceased witness swore upon a lawful occasion, as to the subject in controversy. Now, there are various objections to its admissibility in this latter view. In the first place, the deposition was not taken in any suit at all; nor was it taken in a controversy substantially by and between the same parties. The deposition was taken at the request of the present plaintiff, David Gould, and none of the co-plaintiffs were parties; and the only adverse party summoned to attend the taking of the deposition, was the defendant, Thomas Gould, Jr., and none of the other defendants were summoned as parties. Neither in substance nor in form, was it, therefore, between the same parties. It does not appear to me, that, under such circumstances, it could, in Massachusetts, be used at all under the local law; for to reject it as a deposition taken in perpetuam rei memoriam, and yet to receive it as evidence in the cause, would be to defeat the very objects and policy of the statute of Massachusetts. It would be, to enable the party

to avail himself of his own laches, and to give him the benefit of the evidence, when he had chosen to violate the precepts of the statute. But, however it might be in the state court, it seems to me, that it is not admissible in the courts of the United States; for the act of congress, of the 20th of February, 1812, c. 28 [2 Stat. 682], does not apply to any case where the deposition could not be admissible, as such, in the state court. That act declares, "that in any cause before a court of the United States, it shall be lawful for each court, in its discretion, to admit in evidence any deposition taken in perpetuam rei memoriam, which would be so admissible in a court of the state wherein such cause is pending, according to the laws thereof." Even if this court possessed a discretion on the subject, it could scarcely be deemed a fit case, under such circumstances, to admit the deposition. Taking then the deposition of Ebenezer Buckman out of the case, there is no testimony in support of the bill, which can possibly overcome the strong denials of the answer of the defendant, Thomas Gould, Jr. Even if his deposition were admitted, I should have great difficulty in placing confidence in the truth of the charge asserted in the bill, under all the circumstances. The whole of the supposed bargain was by parol; and it was followed up by no acts of the parties during their lifetime, in performance thereof. And, as it should seem, all the parties rested satisfied with that state of things, during a long course of years, without any public complaint, or any attempt to compel a performance of the bargain, although some of. the terms seem to require a prompt fulfillment. A parol promise would seem a very slender foundation, upon which to rest an acquiescence for so many years, accompanied, as it must have been, with a present sacrifice of title to some portion of the assets of the intestate.

Upon the whole, without going farther into the facts of the case, my judgment is, that the charges in the bill are not made out, and that the bill ought to be dismissed; that each party ought to pay his own costs, except the costs of printing the record, which ought to be equally divided between the plaintiffs and the defendants; the plaintiffs ought to pay one moiety, and the defendants the other moiety thereof; the printing of the record being for the benefit of both parties.