MARY S. STONE *et al.*

*v.*

FRANK L. SALISBURY *et al.*

*Opinion filed April 20, 1904.*

1. RES JUDICATA—*when doctrine of res judicata is limited to matters actually decided.* The doctrine of *res judicata* is limited to such matters as were actually in litigation and actually decided in the former case, where the second suit is upon a different cause of action or relates to different property.

2. SAME—*what not res judicata as to parentage of child.* A partition proceeding wherein one of the parties was alleged to be, and was regarded, as the daughter of the deceased testator, is not, in a subsequent suit concerning different rights and property, *res judicata* upon the question whether such party was the daughter of the testator's wife, there being no proof as to her parentage and no issue raised thereon in the partition suit.

3. ESTOPPEL—*when rule of estoppel by deed does not apply.* Naming the grantee in a deed as the daughter of the grantor's deceased husband does not raise an estoppel against the grantor and her heirs to deny that the grantee was the daughter of the grantor, but is merely an evidentiary fact tending to show the relationship.

4. EQUITY—*when chancellor may submit issue determining jurisdiction to the jury.* On a bill to contest a will the chancellor may submit to the jury the controverted question whether the complainant was the daughter of the testatrix; but the verdict, in that respect, is merely advisory, and may be disregarded or followed by the chancellor as his judgment dictates.

5. COSTS—*when party cannot complain of costs.* If complainant in a bill to contest a will voluntarily proceeds to trial with both issues without seeking to first try the issue whether she was entitled to maintain the bill, she cannot complain, in the event of an adverse finding on that issue, that costs were made in the trial of the other issue relating to the validity of the will.

APPEAL from the Circuit Court of Cook county; the Hon. R. S. TUTHILL, Judge, presiding.

BENJAMIN RICHOLSON, SAMUEL RICHOLSON, and ALEXANDER M. SAVAGE, for appellants.

A. S. TRUDE, GEORGE A. TRUDE, and M. MARSO, (JOHN MAYO PALMER, of counsel,) for appellees.

Mr. JUSTICE RICKS delivered the opinion of the court:

On April 16, 1900, the appellants, Mary Snell Stone and Albert J. Stone, her husband, filed a bill in the circuit court of Cook county to set aside the will of Henrietta Snell, deceased. The bill alleges that appellant Mary Snell Stone is a daughter and heir-at-law of Henrietta Snell, and after designating the other heirs-at-law and setting out the will and alleging that the same was duly exhibited in the probate court and letters thereon issued to the executrix and trustees under the will and the trust accepted by them, charges that the attesting witnesses did not sign the said will at the request of the testatrix or in her presence or in the presence of each other; that the testatrix did not sign said will in the presence of said attesting witnesses and did not know the nature of the instrument she signed at the time of executing the same, and that at said time the testatrix was not of sound and disposing mind and memory. The bill further alleges that Albert J. Snell, a son of the tes-

tatrix and one of the legatees and devisees under the
will, and Frank L. Salisbury, his attorney, who is ap-
pointed executor of said will and who drafted the same,
used and exercised many undue arts and fraudulent prac-
tices and resorted to falsehood and misrepresentation
to induce the testatrix to sign said instrument; that the
testatrix never read said will or knew its contents, and
at the time of the execution thereof was under the im-
proper restraint and undue influence of said Albert J.
Snell and Frank L. Salisbury and was a victim of fraud
and compulsion, and that said will is not the will of the
testatrix; that subsequently to the signing of said will
many erasures and interlineations were made therein;
that after said erasures and interlineations were made
the said will was not signed by anybody.   The prayer
of said bill is that said instrument in writing, and the
probate thereof, may be set aside and declared null and
void and not the last will and testament of said Henrietta
Snell; that the said estate of the said Henrietta Snell be
distributed among her heirs-at-law, (naming them,) and
naming appellant Mary Snell Stone as one of them.

Appellees, Albert W. Adcock, Homer M. Thomas and
Frank L. Salisbury, executors and trustees under the
will, filed their answer, in which they deny that Mary
Snell Stone is the daughter of Henrietta Snell, and deny
that she is interested in the estate of said Henrietta Snell
or interested in the question of whether the writing pro-
duced and admitted to probate is or is not the last will
and testament of said Henrietta Snell; deny that any un-
due influence had been exercised by Frank L. Salisbury
and Albert Jerome Snell, and deny all other charges of
fraud and misrepresentation alleged in the bill; deny that
erasures were made after the will was executed and that
the testatrix was of unsound mind, and deny that the
appellant Mary Snell Stone is an heir-at-law and a legal
representative and daughter of the said Henrietta Snell.
The other defendants answered, denying the charges of

fraud and imposition, and denying that the will in ques-
tion was not the true, last will of the testatrix, but neither
confessing nor denying the allegation of the bill that ap-
pellant Mary Snell Stone is a daughter and heir-at-law
of the testatrix, but calling for strict proof in that regard.

· To these answers replications were filed and the cause
was submitted to trial before a jury. The court, of his
own motion, formulated and presented to the jury two
issues to be passed upon by them. The first issue sub-
mitted was, "Is Mary Snell Stone the daughter of Hen-
rietta Snell?" The second was, "Is the writing produced
in evidence, purporting to be the last will and testament
of Henrietta Snell, deceased, the true, last will and tes-
tament of said Henrietta Snell, deceased?"

When the case was submitted to the jury for consid-
eration, and at the request of the appellant Mary Snell
Stone, four special interrogatories were also submitted
to the jury, which, with the answers thereto as found
by the jury, were as follows:

1. "Is complainant Mary Snell Stone the daughter of
Henrietta Snell, deceased?—No.

2. "Was there any undue influence exercised by Albert
J. Snell over Henrietta Snell, connected with or operat-
ing upon and influencing her at the time of the alleged
execution of the will in question?—No.

3. "Was there any undue influence exercised by Frank
L. Salisbury over Henrietta Snell, connected with or op-
erating upon and influencing her at the time of the al-
leged execution of the will in question?—No.

4. "Was the said Henrietta Snell, at the time of the
execution and attestation of said writing read in evi-
dence, purporting to be the last will and testament of
said Henrietta Snell, capable of intelligently compre-
hending the extent of her property, the disposition she
was making of her property thereby, the nature of the
claims of others upon her and the effect of the provisions
of said alleged will?—Yes."

With these special findings the jury returned their general verdict finding that Mary Snell Stone was not the daughter of Henrietta Snell, deceased, and that the writing produced in evidence purporting to be the last will and testament of Henrietta Snell was her last will and testament. Motion for a new trial was overruled and a decree dismissing the bill was entered, and this appeal prosecuted.

The record is voluminous, containing about two thousand typewritten pages, and it will be impossible within the limits of this opinion to go into an extended review of all the evidence upon all the questions presented. Nor do we think such course necessary to a proper disposition of the case. In the view we entertain of it the controlling questions lie within comparatively narrow limits.

The testatrix was the widow of the late Amos J. Snell, who came to a violent death February 9, 1888, and from him the testatrix derived the large estate here in controversy. The testatrix and Amos J. Snell were married in 1846, and the undisputed evidence is that the only child that was born of both their bodies between the time of their marriage and 1857 was a male child, who was born within a year or so after the marriage and who lived but about three weeks. In 1857 a son, Albert Jerome, was born; in 1863 a daughter, Grace Henrietta, and in 1867 another daughter, Alice Eva, were born. These were the only children born as the issue of the bodies of Amos J. Snell and Henrietta Snell, the testatrix.

On the part of the proponents a large number of witnesses testified relative to the history and supposed parentage of the appellant Mary Snell Stone, and no witness was called to contradict or controvert what these witnesses testified to upon that subject. Their testimony shows that Amos J. Snell and the testatrix settled in Jefferson Park, near the city of Chicago, in the year 1851; that in the year 1853 Partick Hughes and his wife, Anne Hughes, came from Rome, N. Y., to Jefferson Park and

built a little house upon the land of Amos Snell, where they resided. The party who met them at the train upon their arrival, and who was in the employ of Amos J. Snell, was a witness, and testified that at the time of their arrival they had with them two little girls, which they represented to be, and who were understood to be and were accepted by all who knew them to be, their children. These girls were named Mary and Rosa. After Patrick and Anne Hughes, with these children, had resided at Jefferson Park two or three years, Anne Hughes, the wife of Patrick Hughes and the supposed mother of these children, died. They were in poor circumstances and Patrick Hughes was advanced in years. A Mrs. Burns, a sister of Anne Hughes, also lived at Jefferson Park at the same time and was a witness in this case upon this question. After the death of Anne Hughes these two little girls were taken by Mrs. Burns, their aunt, and kept for a time, when, by some arrangement between the father, Patrick Hughes, and Amos J. Snell, they were both taken to his (Snell's) house. The time they were taken to the house of Amos J. Snell is not definitely fixed, and the witnesses (and there were a number of them) state that the child Mary was at that time from five to seven years old. After both these girls had remained at the house of Amos J. Snell for a time, the child Rosa was taken by Brockman Hopkins, who resided at or near Jefferson Park, and from that time the appellant Mary Snell Stone resided in and as a part of the family of Amos J. Snell and took the name of Mary Snell, and by that name she was married from the home of Amos J. Snell, the marriage invitation designating her as the daughter of Amos J. Snell and Henrietta Snell. Mrs. Burns, the aunt of appellant Mrs. Stone, was not in New York at the time of the birth of the latter, but was here in Illinois, and no witness did or could testify to actual knowledge of the parentage of appellant Mrs. Stone, but the story of her being brought from Rome, N. Y., to Jef-

ferson Park in 1852 or 1853 by Patrick and Anne Hughes and being known as their child, and of her having lived with them until the death of Anne Hughes and with Mrs. Burns after Anne Hughes' death, is not disputed or questioned by anybody. It is also shown that after Mary Hughes was taken to the home of Amos J. Snell the latter visited Judge Rucker, the then county judge, as we understand from the record, with a view of having papers drawn for the adoption of appellant Mrs. Stone, but upon arriving at the office of the judge he was found busy and the matter was deferred to some subsequent time. There is no evidence showing that appellant Mary Snell Stone was ever legally adopted by Amos J. Snell, and such is not the claim of appellants.

A family bible was also introduced, which bears date of publication of 1875. In this bible was a family register recording marriages, births and deaths. The register was originally written in the hand of some professional penman, and not by Amos J. Snell or the testatrix or any member of the Snell family. As originally written it contained the entry, "Mary Snell was born March 31, 1851, in the State of Illinois." The undisputed evidence shows that after this entry was made the testatrix erased the name "Snell" and the word "Illinois" from the register, and in her own hand and after the given name "Mary" wrote the name "Hughes," and instead of "Illinois" wrote "N. Y." There was also introduced in evidence, as having belonged to the testatrix, a birthday scripture text book. Under each day of the month this book contained a passage of scripture and a verse and on the opposite page a blank for memoranda. The undisputed evidence discloses that opposite the date March 31, in the handwriting of the testatrix, was the following entry: "Mary Snell, born March 31, 1851, in the State of Ill." When the entry was made does not appear from the evidence and the book in which it was made has no date of its publication, but the evidence discloses that after this

original entry was made the testatrix erased the name "Snell" and the word "Ill." from it and substituted the name "Hughes" and for the State "N. Y."

The testatrix had a box in a safety deposit vault, and some time prior to her death, the date not being definitely known, she placed therein an envelope with this inscription:

"The pictures of the family; for them to look at and read the contents of the writing; give them to the three children.
MOTHER."

The envelope contained two pictures of her son, Albert, one of her daughter Grace, one of her daughter Alice and one of herself. Enclosed with these pictures was the following writing, in the hand of the testatrix:

"Love each other for me. Grace, treat Albert as a brother. Alice, you treat Albert as a brother. Albert, treat Grace and Alice as your sisters, for me, for me.—MOTHER.

"This is sacred; don't pass this by as if it was not worth while to think of. Look over the past and forgive. Your Heavenly Father will forgive you."

These are the express declarations of the testatrix as to her children, and the manner in which they are named absolutely excludes the idea that there could have been any other. Appellant Mrs. Stone does not seek to overcome this testimony by counter-testimony as to her origin, but urges that the appellees are estopped by certain conduct of the testatrix, and certain legal proceedings to which she was a party, to now deny the fact that she was a daughter of the testatrix.

When Amos J. Snell died, the testatrix petitioned the probate court to grant letters of administration to herself and Albert J. Stone, one of the appellants. In that petition she stated that Amos J. Snell left him surviving Mary Snell as one of his children and heirs-at-law, and in the settlement of his estate she was treated as his child and the same distributive share of his estate given to her as was given to his children Albert J., Grace and Alice; also, after the death of Amos J. Snell the testa-

trix filed a bill for the assignment of her dower and the partition of his lands, in which appellant Mrs. Stone was designated as one of the heirs-at-law of Amos J. Snell, and pursuant to this a decree was entered upon the petition, and pursuant to the decree partition deeds were exchanged between the children of Amos J. Snell and appellant Mrs. Stone, and it is particularly urged that in the partition proceedings it was adjudicated that Mrs. Stone was the daughter of Amos J. Snell, and that having been a party to that decree the testatrix was bound by it, and could not by her will, nor could the appellees, as her privies in estate, cast doubt upon the parentage of Mrs. Stone.

It may be first remarked that the property involved in the litigation now at bar is not the property derived by appellant Mrs. Stone through that proceeding, or any part of it, and that by neither this proceeding nor the will in question is it sought to in any manner affect the title to any of the property that passed to appellant Mrs. Stone by virtue of the partition proceedings or the settlement of the estate of Amos J. Snell. The vital question here is, is appellant Mrs. Stone a daughter and heir-at-law of the testatrix? The partition suit was a friendly suit and the matter of heirship was not made an issue or question, nor was there any contest whatever upon that subject, and should have little weight in the present controversy. (*Wadhams* v. *Gay*, 73 Ill. 415; *Farwell* v. *Great Western Tel. Co.* 161 id. 522.) The most that it can be said these proceedings, or any act done under them, tended to show was, that appellant Mrs. Stone was the daughter of Amos J. Snell, and the relation that she bore to Mrs. Snell was not in question nor in any manner adjudicated or affected. It is true that if it had been definitely shown that appellant Mrs. Stone was born after the marriage of Amos J. Snell and the testatrix and that she was the daughter of Amos J. Snell, the legal inference favoring legitimacy would be that she

was also the daughter of testatrix.  But this presumption is not a conclusive one, and may be overcome by proof and must give way to the actual facts.  *Orthwein* v. *Thomas*, 127 Ill. 554.

As to the rule of *res judicata* here invoked, the property to be affected by this proceeding is different and other property than that involved in the suit and proceedings relied upon, and it seems to be well established that before the rule has application in such a case it must appear that the identical question was in fact adjudicated in the former proceeding.  The distinction seems to be, that where the second suit is about the same matter or cause of action, then all matters that could have been, as well as all matters that actually were, put in issue and determined in the former suit are presumed to have been so put in issue, and as to them the rule applies; but when the second action is as to a different cause of action or in reference to a different matter, or relating to different property, then the rule has no application, except as to such matters as were actually in litigation and actually decided in the former proceedings relied upon as *res judicata*.  *Riverside Co.* v. *Townshend*, 120 Ill. 9; *Cromwell* v. *County of Sac*, 94 U. S. 351.

As we have said, the question was not presented in the partition suit whether Mary Snell Stone was a daughter of Henrietta Snell.  It is true that that question might have been presented by denying that appellant Mrs. Stone was the child of Amos J. Snell in the partition suit, and the proof as shown by this record, and which we presume would have been used if the question had been in controversy, would have shown that she was not the daughter of either Henrietta Snell or Amos J. Snell.  But, as is said in the case of *Cromwell* v. *County of Sac, supra:* "It is quite right that a defendant should be estopped from setting up in the same action a defense which he might have pleaded but has chosen to let the proper time go by, but nobody ever heard of a defendant

being precluded from setting up a defense in a second action because he did not avail himself of the opportunity of setting it up in the first action." And so in this case, in the same action the heirs of Henrietta Snell would have been estopped from bringing forward, as a ground of defense, the fact that Mary Snell Stone was not the daughter of Amos J. Snell, but they are not in a subsequent suit, upon a different cause of action, precluded from availing themselves of such ground in proving Mary Snell Stone is not the daughter of Henrietta Snell.

The will in question was made February 2, 1899, and the testatrix died on the 24th day of February, 1900. In 1895 the testatrix filed a petition under the Burnt Records act to establish title to certain real estate to which it appeared Amos J. Snell had at some time had title. In stating who were the children and heirs of Amos J. Snell the testatrix alleged in her petition that the three children, Albert, Grace and Alice, were his only children and heirs-at-law. She further stated, upon information and belief, that appellant Mary Stone would claim, as an heir-at-law, some interest in the property, and made her a party defendant to the petition, and she was regularly served and brought into court. The decree found that the said three children were the only heirs-at-law of Amos J. Snell, and it would be as reasonable to contend that this proceeding was conclusive upon appellant that she was not a child and heir-at-law of Amos J. Snell, as it is to make the contrary contention from the proceeding in partition.

A number of deeds were made to Mrs. Stone to which the testatrix was a party, as grantor, affecting properties that belonged to the estate of Amos J. Snell, in which the consideration was love and affection, and in some of which Mrs. Stone was mentioned as a child and heir of Amos J. Snell, but in none of these deeds was Mrs. Stone named as the child of the testatrix, and if she had been, we are unable to see why that should conclude the tes-

tatrix in other transactions relating to other property than that conveyed by the deeds. We know of no principle of estoppel that would be applicable, but it would be merely an evidentiary fact tending to show the relationship. The principle of estoppel, as we understand it, only applies to the property conveyed by the deed in which the recital is made, and may be invoked to quiet and establish such title. It is a special application of the rule of estoppel which precludes a grantor in a deed from making any declaration of fact, contrary to the recitals of his deed, which would affect the title conveyed. It is true that the evidence discloses many acts and declarations of both Amos J. Snell and the testatrix showing a very sincere affection for and deep interest in Mrs. Stone. It is but natural that it should be so. Nor are such facts inconsistent with the contention of appellees. Mrs. Stone was the child of neither Amos J. Snell nor of the testatrix. Living in the relation that she did to the family for the number of years shown by the evidence, and taken to the family when there was no child of their bodies in the family, it is neither unreasonable nor unnatural that one or both of them should become greatly attached to her, and permitting her to share in the distribution of the estate of Amos J. Snell was but a recognition of the attachment that he bore and showed toward her; but it does not seem sound to contend that because she was so recognized as a beneficiary of the estate of Amos J. Snell, therefore she must, as a matter of law, be recognized as the child and heir of the testatrix, and be recognized as one interested in her estate and entitled to contest her will.

It is contended that it was improper to submit to the determination of the jury the question of the jurisdiction of the court, and that it was a matter for the court itself to decide. The court did decide it, but first took, as we think it had a right to do, the advisory verdict of the jury upon the question, which was one of fact. Sec-

tion 40 of chapter 22 of Hurd's Statutes provides, among
other things: "The court may, in its discretion, direct an
issue or issues to be tried by a jury, whenever it shall be
judged necessary in any cause in equity pending therein." This was unquestionably a case in equity. The fact
that the statute specifically authorizes the contest of
wills in a court of chancery, and directs that an issue
at law shall be made up whether the writing produced
be the will of the testatrix or not, which shall be tried
by a jury, does not in any other respect distinguish such
a case from any other suit or proceeding in chancery in
matters of procedure. The bill in this case alleged that
Mary Snell Stone was a child and heir-at-law of and interested in the estate of the testatrix. It alleged all that
the statute required, and whether those allegations were
true became a question of fact. They were denied in the
answer and an issue of fact was thereby tendered. The
case is unlike that of *Jele* v. *Lemberger*, 163 Ill. 338, where
the contestant, Joseph Lemberger, stated on the face of
the bill that he was of the empire of Germany. In that
case an answer was filed denying the general allegations of the bill, but upon a hearing the relief prayed was
granted, and the decree was reversed by this court upon
the ground that it appeared upon the face of the bill that
the complainant, being a resident and citizen of the empire of Germany, could not, under the Alien law, inherit,
and was not a party in interest, and that the bill should
have been dismissed. In *Russell* v. *Paine*, 45 Ill. 350, it is
said: "Where the evidence is contradictory, depends upon slight circumstances, the veracity of witnesses is involved, and where the manner, intelligence and relation
of witnesses to a case must have their proper weight, it
is highly desirable that the issue should be tried by a
jury." The chancellor was not required to submit this
question to a jury, and when he saw fit to do so the verdict or finding was advisory, only. It was his duty to
render such decree as the law required, under the evi-

dence. He might have disregarded so much of the verdict entirely as related to the capacity of appellant to bring the suit and entered such decree as in his judgment the case demanded, *non obstante veredicto.* *Guild* v. *Hull,* 127 Ill. 523.

It must have been apparent to the chancellor that if the issue as to whether Mary Stone was the child of the testatrix should be settled adversely to the contestant that would terminate the case; that it was one of fact and might involve the testimony of many witnesses. No motion was made by appellant Mrs. Stone to try this issue separately, or to first try the issue as to her right to maintain her bill as a legal heir of the testatrix or as one interested in her estate. So far as the record discloses she voluntarily proceeded with both questions submitted to the jury, and if costs were made upon the issue whether the writing was the will of the testatrix or not, and that evidence became immaterial because the jury and the court found that complainant bore no such relation to the estate of the testatrix, or to the testatrix, as entitled appellant Mrs. Stone to contest the will, she is not now in a position to complain.

In *Way* v. *Way,* 64 Ill. 406, which was a divorce proceeding, and in which it was necessary that the complainant make the statutory allegations as to residence, and the allegation was that the complainant was a resident of Chicago, Cook county, Illinois, and answer was filed denying the allegations of the bill, including that of residence, the question of fact was submitted to the jury, and the practice was approved by this court. In that case it was said (p. 408): "In this case the court had jurisdiction if the bill was true. Its truth was denied, and when the complainant failed to sustain his allegations by proof, the question of the jurisdiction of the court for the first time arose."

Complaint is made that if this decree be allowed to stand it will work great hardship upon appellant Mary

Stone, as it will cast doubt upon her parentage. We are unable to concur in this view. We think this record fairly establishes her parentage. But if the contrary be true, appellant Mrs. Stone instituted the suit which raised the controversy, and the consequences must be with her, and not with the courts.

Holding, as we do, that appellant Mary Snell Stone was not a party in interest in the estate of Henrietta Snell, within the meaning of the law relative to contests, and therefore not entitled to prosecute this suit, we deem it unnecessary to examine or pass upon the questions relating to the execution of the will, the disposing mind of the testatrix, and the influences, if any, that operated upon her in making it.

Upon a mature consideration of the entire record we think the decree entered was such as both law and equity demanded, and it is affirmed.        *Decree affirmed.*