## E. P. Peacock v. Iron and Steel Publishing Company.

### Gen. No. 11,184.

1.  RES ADJUDICATA—*rule of.*  The rule is that where the parties and the subject-matter of the litigation are the same, all matters that could have been, as well as all matters that actually were, put in issue and determined in a former suit, are presumed to have been so put in issue and as to them the rule of *res adjudicata* applies.

Action of assumpsit.  Appeal from the Superior Court of Cook County; the Hon. JOSEPH E. GARY, Judge, presiding.  Heard in the Branch Appellate Court at the March term, 1903.  Reversed and remanded.  Opinion filed June 17, 1904.

GEORGE W. MANIERRE, for appellant; DELBERT A. CLITHERO, of counsel.

CHARLES DANIELS and SUMNER C. PALMER, for appellee.

MR. PRESIDING JUSTICE FREEMAN delivered the opinion of the court.

This is an action to recover installments alleged to be due upon an advertising contract.  Upon the conclusion of all

the evidence the court gave a peremptory instruction directing the jury to find the issues for the plaintiff and assess the plaintiff's damages at the sum of $255. Judgment was rendered accordingly, from which the defendant appeals.

The contract in controversy provided for payment of an agreed sum for an advertisement "until forbid and until ordered discontinued." It was signed "E. P. Peacock, F. E. P.," the initials being placed under the preceding name. In the course of the trial F. E. Peacock, whose initials correspond with those appended to the signature of the contract, was called as a witness in behalf of appellant. He testified that he is "the son of the defendant in this case and employed with him;" that at a justice court he had a conversation with Charles French, appellee's representative, after a trial at which appellee recovered a judgment on the same contract for installments claimed to be due on account of publications of the advertisement prior to that time. The witness stated that he then asked French if he was still publishing the advertisement, to which the latter replied that he was; that the witness told French "that he knew it had been forbidden; that we had forbidden it and did not intend to pay for it." He says, "I think I used some emphatic language in connection with it. I said that if he further published it and continued it we would not pay for it." On cross-examination the witness reiterated that he told French to "cease publishing this advertisement." French himself testifies to the conversation, but states that F. E. Peacock "asked me if I was still publishing this advertisement. I told him I was. He told me practically that I could continue it if I damned well please, I think. He said nothing about forbidding it." Upon rebuttal, a witness called by appellee, testified that he was present at the conversation above referred to, and that Peacock asked French if he was still publishing the advertisement, to which French replied that he was, whereupon Peacock said, "Well, you can publish it if you damned please, but you will never get paid for it." We are unable to see why this evidence should not have gone to the jury. The suit was brought to recover for advertising done in large part, if not

wholly, after that conversation, and if the jury were of the opinion that what it is conceded F. E. Peacock said to French was equivalent to a direction to cease the publication, as they might have been justified in concluding, or believed that Peacock then forbade further publication in express terms as he says he did, and further believed, as from the evidence, including the initials appended to the signature to the contract, they might believe, that F. E. Peacock had authority to act for and represent his father in the transaction, they might properly have returned a verdict in favor of appellant as to all installments accruing for publications of the advertisement thereafter made.

Appellant in one of its pleas denied the existence of appellee as a corporation, and in a sworn plea denied the execution of the contract sued upon. To these pleas appellee replied setting up a former judgment upon the same contract. There was evidence tending to show that the former judgment was for installments then due under the same contract now in controversy. The parties are identical and the subject-matter set up in the pleas referred to is matter of defense which was as applicable in that suit as in this. The rule is that where the parties and the subject-matter of the litigation are the same "all matters that could have been, as well as all matters that actually were, put in issue and determined in the former suit are presumed to have been so put in issue" and as to them the rule *res judicata* applies. Stone v. Salisbury, 209 Ill. 56–65; Phelps v. City of Mattoon, 177 Ill. 169–170. In Miller v. McManis, 57 Ill. 126–129, the defense set up by the pleas there considered was former recovery, and it is said that " to form a bar, the former recovery must be for the identical same cause of action." In the case before us the issue raised by the replications above referred to is not former recovery, but former adjudication of the issue raised by those pleas.

For the error in taking the issues from the jury and directing a verdict, the judgment of the Superior Court must be reversed and the cause remanded.

*Reversed and remanded.*