CHARLES CALKINS *et al.*

*v.*

GILBERT CALKINS *et al.*

*Opinion filed October 23, 1907.*

1. WILLS—*jurisdiction of equity to entertain bill to contest will is wholly statutory.* In Illinois the doctrine that courts of equity have jurisdiction, under their general chancery powers, to entertain bills to contest wills is not recognized, and such jurisdiction is regarded as wholly statutory, and to be exercised only in the mode and within the limitations prescribed by the statute.

2. SAME—*cross-bill to have instrument held to be a declaration of trust is not germane to bill to contest will.* A cross-bill, filed in a proceeding in chancery to contest a will, which seeks to have the instrument held to be a declaration of trust even though it cannot be upheld as a will, is not germane to the original bill, owing to the fact that the court's jurisdiction of the original proceeding is a special, statutory one, and such cross-bill is properly dismissed.

APPEAL from the Circuit Court of Kane county; the Hon. L. C. RUTH, Judge, presiding.

Gilbert Calkins and twenty-two other heirs of Cyrus Calkins filed a bill in chancery in the circuit court of Kane county to contest the will of Cyrus Calkins on the ground

that the witnesses had signed the will in another room and out of the range of vision of the testator. An issue at law was made up and submitted to a jury for trial and a verdict was rendered in favor of the validity of the will. A decree was entered on the verdict of the jury sustaining the validity of the will, to reverse which a writ of error was sued out of this court. Upon a hearing in this court it was decided that the evidence showed that the attesting witnesses had signed the will out of the presence of the testator, and a judgment was entered in this court reversing the decree and remanding the cause. (See *Calkins* v. *Calkins,* 216 Ill. 458.) Upon the re-instatement of the case in the circuit court, appellants, who were the principal beneficiaries under the will, filed an amended answer admitting that the will was not properly executed as a will, and alleged the following facts which were not before the court on the former hearing:

That the deceased, Cyrus Calkins, was a bachelor, who for more than forty years prior to his death had resided upon his farm in Sugar Grove township, Kane county, adjoining that of appellants; that for fifteen years prior to the death of the deceased the appellants had rendered services to the deceased in the conduct of his farm, transaction of his business affairs, caring for him and nursing him in sickness, who, on account of his old age and physical infirmities, was in need of assistance; that the only relatives that the deceased had for many years prior to his death were the nieces, grand-nieces and grand-nephews as named in the bill of complaint, and nearly all of whom lived in other States and had never visited or had any communication with the deceased, and by reason of such conditions were not the natural objects of the deceased's bounty, and that there existed very close family relations between the appellants and the deceased. The answer further alleged that Cora Needham, the daughter of appellants, had for many years prior to the death of Cyrus Calkins rendered services to the de-

ceased by writing his letters, nursing him in his sickness, preparing his meals and mending his clothes, and that on account of these close family relations the deceased had on many occasions expressed the desire to give to appellants the greater portion of his property as compensation for the services, care and attention rendered by appellants. The answer further alleged that prior to the signing of the instrument in question the deceased, Cyrus Calkins, was advised by his physician, F. M. McNair, that the injury which he had theretofore sustained would be liable to produce death on account of his advanced age; that accordingly the deceased requested McNair to procure for him some one to prepare the necessary papers for executing a will; that McNair, in response to the request of the deceased, procured the services of Edward M. Harris, who accompanied McNair to the home of the deceased on the 16th of June, 1903, where, after a conference and consultation with the deceased, Harris proceeded to draw up the instrument in question for the purpose of a last will and testament for Cyrus Calkins to execute; that after the instrument in question had been prepared the deceased told McNair that before he would execute the paper devising to appellants nine-tenths of all his property he desired McNair to visit appellants and obtain from them their promise and agreement that they would give to their daughter, Cora Needham, the sum of $500, and that in consideration of such promise and agreement on the part of appellants, he, the said Cyrus Calkins, would then execute his last will and testament devising and conveying to appellants nine-tenths of all the property which Cyrus Calkins might own or possess at his death; that the said McNair, in accordance with the request of Cyrus Calkins, did visit appellants and obtain from them their promise and agreement to give to their daughter, Cora Needham, the sum of $500; that McNair conveyed such promise, on the part of appellants, to the deceased, who, when told that appellants had promised in accordance with his request, then

said that he would sign and execute the instrument that had been theretofore prepared by Harris, and that said Cyrus Calkins did, in pursuance of such agreement, sign and execute the instrument in question under the belief on his part that he was executing a last will and testament which was valid in law to convey and transfer to the appellants nine-tenths of all his property which he might own at the time of his death. The answer further alleged that after the execution of the instrument in question the same was delivered to McNair for safe keeping, and that the deceased never thereafter in any manner attempted to revoke, annul or in any way change the attempted disposition of his property as set forth in the instrument in question; that afterwards the deceased, Cyrus Calkins, on June 23, 1903, died in the belief that he had fully complied with his promise and agreement to give to appellants nine-tenths of all his property. The answer further alleged that Cora Needham, a few years prior to the death of Cyrus Calkins, had married her husband against the wishes and desires of appellants, and that on account thereof there was an estrangement between the appellants and Cora Needham, which condition of affairs was known to Cyrus Calkins, and the deceased, being desirous of bringing about a reconciliation between Cora Needham and appellants, stated to McNair that he believed if he could obtain a promise on the part of appellants to give their daughter the aforesaid sum of $500, this act on the part of appellants would tend to bring about a reconciliation and family settlement. The answer further alleged that the appellants had paid to Cora Needham the sum of $500 in accordance with their promise and agreement, and asked that although the said instrument might not be sustained as a last will and testament by reason of the same not being attested as required by law, yet that said instrument constitute a declaration in trust and an equitable assignment by the deceased, Cyrus Calkins, sufficient, in law, to give to appellants a right to have a conveyance from all

the heirs of nine-tenths of all the real and personal estate which Cyrus Calkins owned at the time of his death, and prayed that nine-tenths of the property of Cyrus Calkins, deceased, should be decreed by the court to be held in trust by the heirs of Cyrus Calkins, deceased, for the benefit of appellants.

At the time of filing the answer the appellants also filed their cross-bill, alleging the same facts as above set out in the amended answer. The cross-bill prayed that the instrument in writing purporting on its face to be a will might be decreed to constitute a declaration in trust by Cyrus Calkins and an equitable assignment by him to appellants of nine-tenths of all property owned by the deceased at the time of his death, and prayed for an accounting as to the amount of property owned by the deceased, and that nine-tenths of it might be decreed by the court to be held by the heirs of Cyrus Calkins in trust for appellants.

Exceptions were filed by appellees to the amended answer and a general demurrer to the cross-bill was filed, alleging as cause for demurrer that the matters and things set forth in the cross-bill were not germane to the subject matter of the original bill and not triable in this proceeding. The exceptions to the amended answer and the demurrer to the cross-bill were sustained by the court below, and appellants electing to stand by their cross-bill, it was dismissed by the court. Upon a hearing the court entered a final decree on the original bill refusing to admit the instrument in writing to probate as the will of Cyrus Calkins. From that decree appellants have appealed, and assign error upon the ruling of the court in sustaining the demurrer to their cross-bill and dismissing the same.

RAYMOND & NEWHALL, (ROBERT S. EGAN, of counsel,) for appellants.

ALDRICH & WORCESTER, (LEE MIGHELL, of counsel,) for appellees.

Mr. JUSTICE VICKERS delivered the opinion of the court:

Conceding that the instrument probated as the will of Cyrus Calkins is invalid as a will for the reasons pointed out by this court when this case was here before, appellants now claim the same interest in the estate on the ground that the invalid will should be held to operate as an equitable assignment. In the view we take of the case as now presented it will not be necessary to decide whether the facts stated in the cross-bill are sufficient to entitle appellants to the relief sought, since whatever equities appellants may have, if any, cannot be adjudicated in the proceeding to contest the will. The jurisdiction of courts of equity to entertain bills to contest wills is exclusively derived from statute, and can only be exercised in the mode and within the limitations prescribed by the statute. (*Luther* v. *Luther,* 122 Ill. 558; *Jele* v. *Lemberger,* 163 id. 338.) Cases are to be found in some of our sister States which hold that the power of courts of chancery to entertain bills of this character is embraced in the general equity jurisdiction of these courts, but this rule has never been recognized in this State and it is opposed by the great weight of authority both in England and America. *Broderick's will,* 21 Wall. 503; *Gould* v. *Gould,* 3 Story, 516; *Tarver* v. *Tarver,* 9 Pet. 174; *Archer* v. *Meadows,* 33 Wis. 166; 2 Pomeroy's Eq. sec. 913; *Kendrick* v. *Braushy,* 3 Bro. P. C. 358; *Webb* v. *Cleverden,* 2 Atk. 424; *Gaines* v. *Fuentes,* 92 U. S. 10; *Luther* v. *Luther, supra.*

This court has decided that a bill to set aside a will under section 7 of our Wills statute, and for partition, is multifarious, and that the court will, *suo sponte,* enforce the objection. (*Hollenbeck* v. *Cook,* 180 Ill. 65.) In disposing of that question in the *Hollenbeck case* this court, on page 71, said: "It is now claimed by appellant that the court erred in refusing to retain the bill after overruling a motion for a new trial, for the purpose of dividing the lots owned by the parties as tenants in common. We do not concur in that view. We do not think that the partition of

lands is a proper matter to be incorporated in a bill in chancery, brought under section 7 of our Statute of Wills, to contest the validity of a will. Where a bill is brought to contest a will the statute requires an issue of law to be made up whether the writing produced be the will of the testator or not, which shall be tried by a jury. Whether the instrument produced is the will of the testator or not is the question, and the only question, properly involved in a bill brought under the statute to contest a will. On a bill in chancery or petition for partition of lands the question presented is usually one of title to lands,—a question to be determined by the court from the evidence introduced by the respective parties. The latter proceeding is one in no manner connected with a bill brought under the statute to contest a will."

When a bill is filed to contest a will under the statute, the jurisdiction invoked is not the general equity powers of the court but the special statutory jurisdiction, and so far as the scope or extent of the jurisdiction extends it is to be determined by the same rules that would apply if the jurisdiction was conferred upon some particular tribunal created to exercise this special jurisdiction and no other. A court of general jurisdiction may have a special statutory jurisdiction conferred upon it not exercised according to the course of the common law and which does not belong to it as a court of general jurisdiction. In such cases its decisions are treated like those of courts of special jurisdiction. (Brown on Jurisdiction, sec. 13; *Haywood* v. *Collins,* 60 Ill. 328; *Johnson* v. *VonKettler,* 84 id. 315; *Watts* v. *Dull,* 184 id. 86.) Appellants' cross-bill brought forward matters which could only be adjudicated by the exercise of the general equity powers of the court, and were therefore not germane to the original bill.

The demurrer was therefore properly sustained, and the decree will be affirmed.                *Decree affirmed.*