NANCY STEPHENS, Appellant, *vs.* EMMA B. COLLISON *et al.*
Appellees.

*Opinion filed February 25, 1911—Rehearing denied April 5, 1911.*

1. PLEADING—*there is no inflexible rule for determining whether a bill is multifarious—reason for rule.* The reason for the rule against multifariousness in a bill in chancery is to avoid the inconvenience to the defendant of being compelled to present unnecessary defenses or to complicate his defense by combining matters which have no necessary connection with each other; but there is no inflexible rule for determining whether a bill is multifarious.

2. SAME—*when bill to contest will need not be limited to that issue, only.* If it is necessary to the right of a complainant to contest a will that a certain settlement agreement made by her be first set aside, she may combine both subjects for relief in one bill and require the two issues to be passed upon, notwithstanding the parties are entitled to a jury trial upon the issue of the validity of the will. (*Calkins* v. *Calkins,* 229 Ill. 68, and *Tagert* v. *Fletcher,* 232 id. 197, distinguished.)

3. SAME—*when failure to include necessary parties is not failure to invoke jurisdiction.* While the statute authorizing the contest of a will in chancery not only confers jurisdiction but prescribes the time within which such jurisdiction is to be invoked, yet if a bill is filed within the time limited and some of the necessary parties are made defendants, the failure to bring in all the necessary parties until after the time for invoking the jurisdiction has expired is not a failure to invoke such jurisdiction.

4. WILLS—*court may invoke its general equity powers when necessary to the exercise of its statutory jurisdiction.* While the jurisdiction of a court of equity to entertain a bill to contest a will is statutory and does not justify the exercise of the court's general chancery powers by administering relief as to matters not necessary to the contest of wills, yet the court may exercise its general equity powers where it is necessary to do so in order to enable it to exercise the jurisdiction conferred by the statute.

5. SAME—*when failure to make executors parties within a year does not bar bill to contest will.* If a bill is filed to contest a will within the year allowed by law and all persons who are necessary parties are made defendants except the executors, who were made parties as individuals but not as executors, the failure to make the latter parties as executors until after the expiration of the year does not bar the action.

6. FRAUD—*it is not sufficient to allege fraud generally.* To impeach a transaction for fraud it is not sufficient to allege fraud

generally, but the complaining party must state in his pleading the specific acts or facts relied upon as establishing the fraud.

7. SAME—*when transaction may be set aside though misrepresentation is as to a matter of law.* Where a fiduciary relation exists between parties to a transaction a court of equity may, in a proper case, set aside the transaction on the ground that such relation exists, whether the misrepresentations made were misrepresentations of fact or law.

8. SAME—*representation by executors as to amount of personal estate is one of fact.* An averment that the executors of an estate, in order to induce the complainant to make a settlement agreement and not contest the will, represented that the personal estate of the testator amounted to a certain sum when they, in fact, knew it to be much more, may be regarded, in view of the fiduciary relation, as being a sufficient averment of fraud to require an answer.

9. SAME—*averment that the executors represented they had authority from heirs is an averment of fact.* An averment that the executors, when they induced the complainant to execute a settlement agreement, represented that they had authority to, and did, represent all the heirs and that the heirs would all sign the agreement, when, in fact, they had no authority to represent a certain heir, who refused to sign it, is an averment of fact and a sufficient allegation of fraud, when considered with the other averments, to require an answer.

10. The court construes the bill filed in this case, and holds that it is not multifarious, that the allegations of fraud are sufficient to require an answer, and that the court erred in sustaining demurrers and dismissing the bill.

APPEAL from the Circuit Court of Ford county; the Hon. T. M. HARRIS, Judge, presiding.

PHILLIPS & LUDLOW, and HERRICK & HERRICK, for appellant.

BARRY & MORRISSEY, and SCHNEIDER & SCHNEIDER, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

This suit was begun by appellant in the circuit court of Ford county by bill in chancery to set aside a certain agreement and lease made between complainant and the execu-

tors of the will of her father, Josephus Martin, and his heirs, and to contest the will of said Josephus Martin and set aside certain deeds made by him to his children other than complainant, and to his grandchildren, in his lifetime. The bill also sought to partition the land of the said Josephus Martin among the heirs.

The original bill alleged that the purported will was executed on June 11, 1906, and the deeds were executed shortly before that time. Josephus Martin died January 6, 1909, and left surviving him his widow, Hannah J. Martin, his children, Emma B. Collison, Mary E. Collison, Josephus W. Martin and complainant, and his grandchildren, Effie Ireland, Walter Karr, Edna Duncan and Charles Karr, only children of a deceased daughter of said Josephus Martin, as his only heirs-at-law. The bill charged that at the time the deeds and will were executed said Josephus Martin was not of sound mind and was mentally incapable of making any disposition of his property; that Fred Collison was the husband of Emma B. Collison and drew the writing purporting to be the will, "and used and exercised many undue arts and fraudulent practices and resorted to falsehood and misrepresentation to induce said Josephus Martin to execute the said instrument of writing, and the said Fred Collison having gained the confidence of his father-in-law, said Josephus Martin, by fraudulent and deceitful practices, thereby the said Josephus Martin's mind was prejudiced and poisoned against this complainant and her family; that the said Josephus Martin, in executing the same, was, in fact, under improper restraint and undue influence and laboring under an insane delusion concerning this complainant and her family, from the arts and fraudulent practices and false representations of said Fred Collison, defendant." Copies of the deeds and will were attached to and made a part of the bill. The only property given to complainant by the will was $1000 per year to be paid to complainant during her life by the executors, and

the payment of said annuity was made a charge against the rents from 227 acres of land in Champaign county, which was devised to the executors to be held in trust for that purpose during the life of complainant, and at her death 147 acres of said land was to go to Charles Stephens and the remaining 80 acres to Hazel Stephens for life, and at the death of Hazel Stephens one-fourth of it was to go to each of the testator's children, Emma B. Collison, Mary E. Collison and Josephus W. Martin, and the other one-fourth to the grandchildren before mentioned. The bill alleged that the purported will was admitted to probate in Ford county February 1, 1909, and letters testamentary granted to Fred Collison and G. W. Karr, who were named in said purported will as executors thereof, and said Collison and Karr qualified and took upon themselves the duties of executors of said will. On the 26th of May, 1909, an agreement was entered into between complainant and the other children of Josephus Martin (except Josephus W. Martin) and the grandchildren of said Josephus Martin, by which said children (except Josephus W. Martin) and said grandchildren agreed to pay complainant $4000 in money, and if an ante-nuptial agreement between Josephus Martin, deceased, and his surviving widow should be sustained by the court, to convey to said complainant their interest in the 80 acres of land in which Hazel Stephens was given a life estate after the death of the complainant, and complainant agreed to accept the said sum of money and said conveyance on the condition named, in full satisfaction and discharge of all her interest and claim in and to the property and estate of her deceased father. At the same time this agreement was made, and as a part of the consideration for making it, the executors made a writing called a life lease to complainant, reserving no rent, for the 227 acres of land. At the time this lease was made said land was leased for one year to one J. A. Collison, and the executors assigned that lease to complainant and also assigned to her

the notes given by said J. A. Collison for the rent, amounting to $1358. The bill charged that said agreement and settlement were procured by the executors by fraud, and that when complainant discovered the fraud she tendered back the $4000 which had been paid to her, with interest at five per cent from the time she received it, and also the lease made to her for the 227 acres and the J. A. Collison lease and notes which had been assigned to her. Fred Collison and G. W. Karr were made defendants to the bill, but in that portion of the bill where they were named defendants, and in the prayer for process, they were not described as executors.

Emma B. Collison and Mary E. Collison filed a general and special demurrer to the bill, and assigned as special grounds of demurrer that the executors of the will were necessary parties but had not been made defendants to the bill; that the bill was multifarious; that the allegations of undue influence exercised by Fred Collison in procuring the will, and the allegations as to the fraudulent procurement of the $4000 agreement and the acceptance of the lease on the 227 acres of land, were insufficient. Fred Collison and G. W. Karr, as individuals and not otherwise, demurred to the bill on the ground that they were not necessary parties thereto and the bill showed no right to any relief against them. All the demurrers were sustained except as to the alleged insufficiency of the charges of undue influence in procuring the execution of the will. Thereupon, by leave of court, complainant amended the bill by striking out the prayer for partition and the prayer to set aside the deeds made to his children and grandchildren by Josephus Martin in his lifetime, and substituting other allegations of fraud on the part of the executors in procuring the agreement and lease in lieu of the allegations in the original bill. Collison and Karr, executors, were made defendants to the amended bill. Certain of the defendants demurred to the bill as amended, generally and specially, and assigned as

some of the grounds of demurrer that the bill as amended was multifarious; that the allegations of undue influence in procuring the will were conclusions of the pleader and not statements of facts, and were therefore insufficient; that the allegations of insane delusion were insufficient in not showing the nature of the delusion, and that the allegations of fraud in procuring the $4000 agreement and the acceptance of the lease were insufficient. The executors demurred to the bill as amended on the ground that no action had been begun against them to contest the will within one year after its probate, also because the allegations of undue influence in procuring the will, the alleged insane delusion of the testator, and of the procurement of the execution of the $4000 agreement and lease, were insufficient. Complainant, by leave of court, struck out the allegation as to the insane delusion, and the cause coming on to be heard on the demurrers to the bill as amended, the record shows that each of the demurrers was sustained by the court, and complainant electing to stand by her bill as amended, a decree was entered dismissing the bill at her cost, and she prosecutes this appeal to reverse that decree.

Appellees contend that the jurisdiction of a court of equity to entertain a bill to contest a will is statutory; that under such a bill the general equity powers of the court are not invoked, and that joining in a bill a matter cognizable under the general equity powers of the court made the bill multifarious. All courts agree that there is no settled, inflexible rule for determining whether a pleading is multifarious. Judge Story says: "The conclusion to which a close survey of all the authorities will conduct us, seems to be that there is not any positive, inflexible rule as to what, in the sense of courts of equity, constitutes multifariousness, which is fatal to the suit, on demurrer." (Story's Eq. Pl. sec. 539.) One of the important reasons for the rule against multifariousness is to avoid the inconvenience to the defendant of being compelled to present unnecessary

defenses or to complicate his defense by combining matters which have no necessary connection with each other. In *Baird* v. *Jackson,* 98 Ill. 78, this court said (p. 92): "Story, in his work on Equity Pleadings, after reviewing the various cases on the subject, in section 539 says: 'It seems to be that there is not any positive, inflexible rule as to what will be fatal on demurrer; that courts have always exercised a sound discretion in determining whether the subject matters of the suit are properly joined or not and whether the parties, plaintiffs or defendants, are properly joined; that each particular case must to some extent depend on its own facts, having reference to former decisions, being governed by analogies.'" A bill is not multifarious where it joins two distinct matters which merely prevent a needless multiplicity of suits and cause defendant no inconvenience nor additional expense. (Fletcher's Eq. Pl. & Pr. sec. 113.) "In accordance with the aim of equity to administer complete relief in one suit, a bill is not multifarious so long as it seeks to enforce a single right, although that enforcement demands an investigation of several matters and relief of a complex character and consisting of different elements. The court will in a single suit investigate and determine all questions incidental to the determination of the main controversy and will grant all relief incidental to the accomplishment of the main object of the bill." (16 Cyc. 244.)

It was indispensable to complainant's right to contest the will that the settlement agreement be set aside. It does not follow that if she is entitled to the relief prayed as to the settlement agreement this would invalidate the will. She might be entitled to be relieved from the settlement and the will still be valid, but setting aside the settlement was a necessary incident to her right to maintain her bill to contest the will. Why should she be required to bring two suits before the same chancellor against the same parties, and make two lawsuits, when no rights of the defend-

ants could be prejudiced by combining both matters in one suit and the rights of complainant might be seriously prejudiced if she could not do so? Requiring two separate suits might defeat complainant's right to have a hearing on her bill to contest the will. The law requires a bill to contest a will to be filed within one year after the will is admitted to probate. If complainant were required to file a separate bill to set aside the settlement, that suit would have to be tried and finally determined before she could have a hearing on a bill to contest the will. The suit to set aside the agreement might not, on account of delay in getting a hearing or the prosecution of an appeal or writ of error, be finally determined within the year allowed for filing a bill to contest the will. In that case, to avoid being barred from contesting the will, she would have to, file the bill for that purpose before the suit to set aside the settlement agreement had been determined. With the suit to set aside the agreement not determined, the settlement would be a bar to the right of complainant to prosecute her suit to contest the will. A plea by defendants of a release by complainant of her cause of action would be a good plea to the bill, and if heard, as it well might be, before the other suit was determined, would result in the dismissal of the bill. If a year had elapsed since the will was admitted to probate, the right to contest the will would be at an end even though the settlement agreement might afterwards be held invalid and set aside. The statute conferring jurisdiction on a court of equity to contest wills extended the jurisdiction to a subject over which it had not before had jurisdiction under its general equity powers, but did not render the court any less a court of equity and did not deprive it of jurisdiction of any subject of which it had jurisdiction previous to the enactment of the statute. It was not the purpose of the statute to authorize a court of equity to exercise its general equity powers by administering relief upon subjects not necessary to the contest of wills, and for this reason it is

held partition cannot be asked in a bill to contest a will; but it must have been the intention of the legislature when it conferred jurisdiction upon a court of equity to contest wills, that the court should have authority to invoke its general equity powers when necessary to the exercise of the jurisdiction conferred by the statute.

*Wilcoxon* v. *Wilcoxon,* 165 Ill. 454, presented a situation in some respects similar to this case. There a bill was filed to contest a codicil to a will and to set aside certain deeds made by the testator shortly after executing the codicil. It was essential to the rights asserted in complainant's bill that both the codicil and the deeds be set aside. To have invalidated either one and left the other in force would have been of no benefit to complainant. The circuit court and this court heard and determined the case on its merits upon both subjects embraced in the bill.

*Ring* v. *Lawless,* 190 Ill. 520, was a bill to contest a will and to set aside certain deeds made by the testator. The defendants filed a general and special demurrer to the bill and raised the question of the right to ask that the deeds be set aside in a bill to contest the will. The demurrer on these grounds was overruled and defendants answered the bill. Issues out of chancery as to the validity of the deeds and an issue under the statute as to the validity of the will were submitted to the same jury. The jury found both invalid and the chancellor entered a decree setting aside the will and the deeds. From that decree an appeal was prosecuted to this court, and the correctness of the ruling of the circuit court in overruling the demurrer was challenged, but this court held that by answering to the merits and going to trial upon the issue made, the defendants waived the objection that the bill was multifarious, and the case was considered on the merits upon both issues. True, combining both subjects in one bill would require two issues to be passed upon. Upon the issue as to the validity of the will the statute gives the right to a trial by

jury, and upon the issue as to the validity of the settlement agreement, whether it should be submitted to a jury or not would be discretionary with the chancellor, but, as said in *Williams* v. *Crabb,* 117 Fed. Rep. 202, in discussing a similar objection to the one here made, this is neither a grave nor an insuperable objection. In that case the court said a court of equity is elastic in its procedure and can adapt itself to the varied circumstances of a case in order to do justice.

*Stone* v. *Salisbury,* 209 Ill. 56, was a bill to contest a will. The complainant alleged she was the daughter of Henrietta Snell, the testatrix, and set up various grounds upon which she claimed the will was invalid. Defendants answered the bill, denying the allegations that the will was invalid, and also denied that complainant was a daughter of the testatrix and denied she had any interest in the estate. The court submitted the issue to the jury whether complainant was a daughter of the testatrix, also the issue whether the writing was the will of Henrietta Snell. The jury found both issues against complainant, and on appeal by her to this court she contended that the chancellor erred in submitting both issues to the jury, and upon this question this court said (p. 68) : "The chancellor was not required to submit this question to a jury, and when he saw fit to do so the verdict or finding was advisory, only. It was his duty to render such decree as the law required, under the evidence. He might have disregarded so much of the verdict entirely as related to the capacity of appellant to bring the suit and entered such decree as in his judgment the case demanded, *non obstante veredicto.*"

The bill before us is distinguishable from the bills in *Calkins* v. *Calkins,* 229 Ill. 68, and *Tagert* v. *Fletcher,* 232 id. 197. That the jurisdiction of a court of equity to entertain a bill to contest a will is derived from the statute does not make a will contest any the less a case in equity, nor prohibit the court from granting other equitable relief

in the same suit where such other relief is indispensable to a determination of the validity of the will. In *Stone* v. *Salisbury, supra,* the court said, on page 68: "This was unquestionably a case in equity. The fact that the statute specifically authorizes the contest of wills in a court of chancery and directs that an issue at law shall be made up whether the writing produced be the will of the testatrix or not, which shall be tried by a jury, does not in any other respect distinguish such a case from any other suit or proceeding in chancery in matters of procedure."

The bill as amended was not obnoxious to demurrer on the ground that it was multifarious.

The amendment to the bill describing Collison and Karr as executors was made at the April term, 1910, of the Ford county circuit court. This was more than one year after the admission of the will to probate, which was February 1, 1909. The original bill was filed January 24, 1910. Appellees claim that no suit to contest the will was begun until the executors were made parties defendant by the amendment, and said amendment having been made more than one year after the will was admitted to probate, the court had no jurisdiction to entertain the bill. We do not agree with this contention. It is true, the executors were necessary parties defendant; but so, also, were the heirs, devisees and legatees. The latter were made parties defendant to the original bill. The original bill alleged that Collison and Karr had been duly appointed and were acting as executors. The bill asked that Collison and Karr be made defendants and that they be served with process, but did not ask that they, as executors, be made parties defendant and that process issue for them as executors. As individuals and as executors they were different persons and the bill should properly have made them defendants as executors, but the failure to do this does not mean that no suit was brought to contest the will until they were made parties as executors. The statute requires the suit to be commenced

within one year after the probate of the will. If it is so brought, the omission, by oversight, to make some necessary party a defendant until more than a year after the probate of the will, will not bar the action. Here the suit to contest the will was commenced within a year and all heirs and devisees were made defendants. Collison and Karr were made defendants also, but not as executors, although the bill alleged they were executors, and it is apparent that they were proper and necessary parties only in that capacity. Having made all other necessary parties defendants to the bill but obviously by mere oversight having failed to make Collison and Karr, as executors, defendants, to hold that the action was not brought until they, as executors, were made defendants would be contrary to reason and justice. It has been held that the statute authorizing the contest of a will in chancery is not properly a limitation law; that it is merely a grant of jurisdiction to be exercised within the time specified, and not a limitation upon the exercise of a jurisdiction already conferred; but it has also been held that if the suit was begun within the time prescribed, the jurisdiction extends to the investigation of every ground upon which the validity of the will may be assailed, even though some of the grounds may not have been properly set forth in the bill until after the expiration of the time within which the suit is required to be commenced. (*Sinnet* v. *Bowman,* 151 Ill. 146.) While the statute authorizing the contest of a will in chancery is not properly a limitation law but is a statute conferring jurisdiction, it goes further than merely conferring jurisdiction and prescribes the time within which the jurisdiction conferred must be invoked. If the jurisdiction conferred is invoked by filing the bill within the time limited the bill must be entertained, and the failure to make a necessary party a defendant to the bill within a year when other necessary parties are made defendants is not a failure to invoke the jurisdiction within a year.

It is further contended the allegations of fraud upon which it is sought to set aside the settlement agreement are insufficient and the demurrers were properly sustained to the bill on that ground. If this contention were correct the decree dismissing the bill was proper, for unless by its allegations it stated such facts as to make a case requiring defendants to answer that part of the bill, the court could not retain the bill to contest the will. The substance of the allegations of fraud in the amended bill is, that complainant was dissatisfied with the disposition made by her father of his property by the will and the deeds and was about to commence a suit to contest and set them aside; that she was ignorant of the amount of the personal estate left by her father, and that the executors, intending to cheat and defraud her, came to her house in Chicago pretending to be her friends and acting in her interest, and falsely and fraudulently represented to her that the deeds could not be set aside, but that if they could be it would require seven separate suits and large expense, and if the will was set aside the 227 acres of land devised to the executors in trust to secure the payment of complainant's annuity might be set off to the widow as dower and complainant would receive less than if the will was sustained; that Collison knew the amount of the personal estate left by her father but fraudulently represented it to be $48,000, when, in fact, it was much more; that said executors represented to complainant that they were authorized to act for all the heirs of Josephus Martin, and told her they would procure all of said heirs to sign the settlement agreement for the payment to complainant of $4000 and the conveyance to her by the heirs of the 80 acres of land upon the condition stated in said agreement. The amended bill alleges that Josephus W. Martin did not sign the agreement, and after she had accepted it and the lease and had received the $4000 she learned that said Josephus W. Martin refused to sign said agreement, and he still does refuse to sign it, although at

the time she accepted said agreement she did so with the understanding that the executors would procure the signature of Josephus W. Martin thereto. The bill, as amended, further alleged that when complainant learned that the representations as to the value of her father's personal estate were false and untrue and that Josephus W. Martin had not agreed to sign the settlement agreement but refused to sign the same, she tendered back to the parties the $4000, with interest thereon from the time she received it, and also tendered back to the executors the lease to her of the 227 acres of land and the lease and notes of J. A. Collison assigned and delivered to her by the executors; that said tenders were refused, and complainant brings the money, leases and notes into court and makes tender of them.

The rule is well settled that where it is sought to impeach a transaction on the ground of fraud it is not sufficient to charge fraud generally, but the complaining party must state in his pleading the specific acts or facts relied on as establishing the fraud. *Langlois* v. *McCullom,* 181 Ill. 195; *East St. Louis Connecting Railway Co.* v. *People,* 119 id. 182; *Fortune* v. *English,* 226 id. 262.

It is insisted by appellees that the representations that the deeds could not be set aside were representations as to matters of law, and that equity will not relieve from the consequences of a transaction for such misrepresentations. As to the other allegations, it is argued that they are mere statements of conclusions, and are not statements of any such facts as are required in a pleading where it is sought to set aside a transaction on the ground of fraud. The rule as to misrepresentations of law is not the same where a fiduciary relation exists as it is where there is no such relation between the parties. Courts of equity look with suspicion upon any transaction by which a person occupying a relation of trust and confidence towards another obtains any benefit from the confiding party, and under some circumstances, in such cases, will set aside a transaction on

the ground that a confidential relation existed, whether the misrepresentations were as to facts or the law. 1 Story's Eq. Jur. secs. 218, 308-338; 2 Pomeroy's Eq. Jur. secs. 955, 956; Bispham's Principles of Equity, secs. 212, 231-238; 14 Am. & Eng. Ency. of Law, pp. 54, 57; 20 Cyc. 34; *Jordan* v. *Stevens,* 51 Me. 78; 81 Am. Dec. 556.

The allegations as to the misrepresentation of the amount of the personal estate of Josephus Martin were, that it was represented to be $48,000 when, in fact, the executors knew it to be much more. How much more the bill does not allege, and if the parties occupied no relation of trust and confidence toward each other it might be that the allegation would be insufficient, but in view of the relations existing between the parties the bill was not, in our opinion, obnoxious to demurrer on that ground.

It cannot be seriously questioned that, independently of any fiduciary relation between the parties, the allegation that the executors claimed to complainant that they had authority to, and did, represent all the heirs of Josephus Martin and that they would all sign the agreement, when, in fact, they had no such authority and one of the heirs refused to sign it, was a sufficient allegation of fraudulent representations. In addition to the $4000 which appears to have been paid by the heirs who signed the agreement, a part of the consideration for the settlement was that all the heirs of Josephus Martin would, if the ante-nuptial agreement between Josephus Martin and his widow should be sustained, convey to complainant their interest in 80 acres of land (part of the 227 acres) which by the will was devised to Hazel Stephens for her life after the death of the complainant, and at the death of Hazel Stephens was to go to Josephus Martin's children and grandchildren. It is true, the lease and agreement were signed by all the parties except Josephus W. Martin and complainant accepted the $4000 and the lease, but the bill alleges that when she did so the executors represented to her that they would have

Josephus W. Martin sign the agreement. The bill alleges he has never signed it and refuses to do so, so that if the ante-nuptial agreement should be sustained appellant would have no right to compel Josephus W. Martin to convey to her his one-fourth interest in remainder to the 80 acres of land.

In our opinion the allegations of the bill were sufficient to require the defendants to answer it, and the court erred in sustaining demurrers to and dismissing it. The decree is therefore reversed and the cause remanded, with directions to overrule the demurrers.

*Reversed and remanded, with directions.*