Frank C. Hughes, Appellant, v. Ednyfed H. Williams, Administrator with Will Annexed of the Estate of Mary H. Hughes, Deceased, et al., Appellees.

Gen. No. 40,347.

Opinion filed April 26, 1939.

HUBERT E. PAGE, of Chicago, and LOUIS H. JOSS, for appellant.

MAURICE S. WEINZELBAUM, of Chicago, for appellee.

ORVILLE J. TAYLOR, of Chicago, for certain other appellee.

POPPENHUSEN, JOHNSTON, THOMPSON & RAYMOND, of Chicago, for certain other appellees; FLOYD E. THOMPSON, SAMUEL W. BLOCK and C. LYMAN EMRICH, JR., all of Chicago, of counsel.

MR. PRESIDING JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

Frank C. Hughes filed a complaint in the superior court to contest the will of his mother, Mary H.

Hughes, deceased, and to compel an accounting by his brothers, Edmond A. Hughes, George A. Hughes, and William V. Hughes, and his sister, Helen Hughes Dulany, for property which he alleged belonged to his mother at the time of her death and should have been inventoried as part of the assets of her estate by the administrator.

One of the defendants, George A. Hughes, incorporated in his answer a motion to strike the complaint on the ground that it did not tender an issue which defendant should be required to answer and that it improperly joins a proceeding to contest the will of Mary H. Hughes, of which the superior court has jurisdiction, with a proceeding to set aside certain transactions alleged to have occurred outside the State of Illinois between Mary H. Hughes and Edmond A. Hughes some 20 years ago, and to require said Edmond A. Hughes to account for property alleged to have been obtained through said transactions and now held in trust for the estate of said Mary H. Hughes, over which said court has no jurisdiction. Edmond A. Hughes filed a special and limited appearance and motion to quash service by publication with respect to that separate cause of action alleged in the complaint which relates to transactions wholly unrelated to the execution and publication of the will of Mary H. Hughes. Edmond A. Hughes also filed an answer to that part of said complaint which alleges grounds of contest of the will of Mary H. Hughes and exceptions and motions to strike other parts of the complaint. William V. Hughes and Helen Hughes Dulany filed answers which substantially adopt the answer and motion to strike of George A. Hughes. The motion of Edmond A. Hughes to quash service was overruled and he filed his answer to the paragraphs relating to matters other than the contest of the will. The motions to strike were overruled.

The court entered an order separating for trial the causes of action alleged in the complaint and ordered that the single cause of action contesting the will of Mary H. Hughes, deceased, be first tried. The proof received at the trial, the arguments of counsel, and the instructions of the court were limited to this single issue. No other issue was decided.

Being dissatisfied with the rulings of the court in permitting the admission of certain evidence, the verdict of the jury finding the will in question was the last will and testament of Mary H. Hughes, deceased, and also being dissatisfied with the judgment of the court sustaining said verdict as well as the allowance of $300 as attorney's fees to defendant, these points are brought before us for review.

It is contended by plaintiff that the deceased Mary H. Hughes, at the time she made her alleged will on October 7, 1930, was mentally incompetent to dispose of her property and that the will, as a result thereof, was not her last will and testament and also that she was subjected to undue influence by the defendant Edmond A. Hughes.

It is further claimed that at the time the alleged will was made, the said Mary H. Hughes was a woman upwards of 80 years of age and that she had considerable wealth which amounted to over a million dollars, with its attendant difficulties, and that in the latter years of her life she maintained a household although she was in the care of nurses and unable to carry on the duties incident thereto.

Several doctors and nurses who had attended the deceased during the latter part of her lifetime were produced as witnesses at the time of the trial and much of their testimony was in sharp conflict. Some of them in testifying relative to her competency stated that she did not have sufficient mental capacity to plan the disposition of her property. Other witnesses who

apparently had an equal opportunity to know of her condition testified as to the brilliancy of her mind and her understanding of everything she did and that she was fully able and capable of providing for the distribution of her property and that the will she made on October 7, 1930, was her last will and testament.

It is claimed that error was committed by the court in permitting George A. Hughes and Helen Hughes Richards to testify as they were disqualified by the provisions of section 2 of the Evidence Act [Ill. Rev. Stat. 1937, ch. 51, § 2; Jones Ill. Stats. Ann. 107.068].

We do not see any force to the claim that it was error to call George A. Hughes and Helen Hughes Richards as witnesses in support of the will. They were not named in the will and were not beneficiaries therein. They were not called as witnesses in their own behalf and inasmuch as they testified to uphold and support said will, we cannot see how they could be considered as interested parties testifying in their own behalf, as mentioned in the statute.

We do not think the evidence shows that these witnesses will gain or lose as a direct result of this suit. What might happen in the future is too speculative for the court to consider or pass upon, therefore, we must confine ourselves to the direct result of this suit in compliance with the terms of the statute as construed by the courts.

We do not think the record in this case shows any direct interest in the subject matter involved in this law suit which would disqualify these parties from testifying as witnesses. As was said in *Brownlie v. Brownlie,* 351 Ill. 72, at page 76: "The test of interest which determines the competency of a witness in a will contest is whether he will gain or lose as the direct result of the suit, and the interest must be certain, direct and immediate. (*Wetzel v. Firebaugh,* 251 Ill. 190). The interest that disqualifies a witness is

the actual interest, and not his belief, understanding or feeling in regard to such interest. (*Pyle v. Pyle,* 158 Ill. 289).'' See also *Britt v. Darnell,* 315 Ill. 385.

It is next contended by plaintiff that the evidence shows that Edmond A. Hughes controlled his mother's actions to such an extent that he caused her to make the will in his favor. The evidence before us shows that the will was made at a bank and trust company, the will having been drawn up by an attorney for the trust company; that employees of the trust company and of the bank who were present and witnessed the will stated that Mary H. Hughes was a woman of mature years, but that she was in a normal state of mind; that she came there and the will was drawn and that all the preliminaries in accordance with the law were observed; that Edmond A. Hughes was not pres-ent and that the will was executed as her free and voluntary act and that there was no want of testa-mentary capacity exhibited at the time the will was executed.

The question of undue influence charged to a certain member or members of a family, where a will is con-tested, is not a new question in jurisprudence. Chil-dren are often charged with having influenced their parents to make a will in their favor and the courts have passed upon such charges many times. The mere fact that a child is living with a parent does not estab-lish a fiduciary relationship and the influence which is charged must be shown to have existed and was di-rectly operative at the time of the execution of the instrument.

A case somewhat similar to the one at bar is that of *Cunningham v. Dorwart,* 317 Ill. 451, wherein at page 452 it is stated:

''Proponent, George F. Dorwart, and his sister, the testatrix, had for thirty or more years prior to the time the will was made, conducted a grocery store in

Jacksonville, Illinois, as equal partners. For a long time they lived in the upper story of the building their grocery store was conducted in. When they began the business contestant was a young child and lived with his mother and her brother, who was a bachelor. When contestant grew to manhood he married and left the home of his mother. Testatrix and her brother from time to time purchased inexpensive property from the profits of their grocery business, and title was taken in the name of the brother and sister to all property so purchased. Their bank account was in their joint names and neither of them ever kept a separate bank account. About 1903 they sold their grocery store and purchased a residence in Jacksonville, to which they moved and where they resided at the time of testatrix's death. Their partnership relations in owning and managing their properties, renting them and collecting rents, continued as they had before they sold the grocery store. There was no great difference in their ages. Proponent was most active in the management of the business of renting and collecting rents and testatrix kept house. Sometimes, in the absence of proponent or when it was convenient, testatrix would collect rents. Their relations were always pleasant, and there is no evidence of any differences between them on account of property, or anything else. On the 14th of January, 1920, the brother and sister went together to the office of the attorney who had been advising them about their property and business for some years and told him they each wanted to make a will in favor of the other. Testatrix said she wanted to give her son $3000, to be paid him within a year after her death, and wanted to give the remainder of her estate to her brother. Proponent said he wanted to make a will giving $3000 to brothers and sisters and the remainder of his estate he wanted to give to testatrix. After taking a memorandum of the names

of persons to whom property was to be given, they left the attorney's office and he afterwards prepared the two wills. The next day they returned to the attorney's office and executed the wills. Neither was in the room where the other executed his or her will.

"The total value of the partnership property was approximately $60,000. The proof showed the testatrix was an intelligent woman, of sound mind and many years of business experience. The jury found she was of sound mind and disposing memory at the time she made the will, and this finding is not disputed by contestant.

"Appellant contends the evidence is wholly insufficient to justify setting aside the will on the ground of undue influence; that there was no evidence that proponent exercised any undue influence over testatrix at any time or that any such influence was operating at the time the will was made; that there is no evidence of coercion, restraint, duress, domination, or any wrongful act of proponent over testatrix during all the years they lived together and conducted their partnership business, down to the time of the death of testatrix. Appellant also contends the court erred in giving instructions for contestant and refusing instructions for proponent. Appellee contends that the evidence on the subject of undue influence supports the verdict and decree, and that no other question is to be considered in the decision of the case.

"We are of the opinion the evidence was not sufficient to warrant the verdict and decree and that they are contrary to the manifest weight of the testimony. The proof shows testatrix was a woman of intelligence and business experience. By the efforts and co-operation of herself and appellant they accumulated considerable property. They were many years in doing this. During all that time they worked in harmony, and, so far as the proof shows, their relations were

amicable and there were no bickerings or disagreements. They consulted and advised with each other about investments. To all appearances they were considerate of and devoted to each other. Appellant was a bachelor and younger than testatrix. His hearing was defective, and when he was called to the telephone by persons wanting to talk to him about business matters, testatrix would answer the telephone and make an appointment for him to meet the party wanting to talk to him. Testatrix had pneumonia in 1917, and during the later years of her life her health was not good and she was not as strong as formerly. She and appellant spent four or five winters in the South. The arrangement for railroad tickets for these trips were usually made by testatrix, because, as she said, appellant could not hear well. She enjoyed these trips with appellant, and on her return would tell her friends where they had been and how they enjoyed the trip. *There is an entire absence of testimony to indicate that testatrix was subject to the dominance and control of appellant.''*

So, in the instant case, we cannot find any evidence which purports to show that at the time the will was executed Edmond A. Hughes influenced his mother in the disposition of her property. On the contrary, the evidence shows a normal, considerate, happy family and we cannot find anything which would indicate any desire on the part of one member of the family to overreach the others. As heretofore stated, the mere fact that a will is made by a parent in favor of a child, who at the time is living with that parent, raises no presumption that the will is the result of undue influence.

A reading of the will discloses that prior to the making of her will Mary H. Hughes had disposed of all her property to all her children and the will further recites that if Edmond A. Hughes is not living, at

the time of her death, then the property so bequeathed should go to her remaining children share and share alike. We have been unable to find in this record the slightest indication that this mother intended to do otherwise than divide her property as she wished among her children and did not intend to discriminate against any of them. It must also be remembered that the property devised and bequeathed was the property of the decedent and she also had the right to give it to whom she wished.

As was said in the case of *Huffman v. Graves,* 245 Ill. 440, quoting from the syllabus:

"No presumption that a will made by a parent in favor of a child was procured by the child's undue influence arises from the mere fact of their relationship, in the absence of evidence that a confidence was, in fact, reposed in the child; nor do the mere facts that the child procured the attendance of the attesting witnesses and had a disagreement with another child over the matter raise any such presumption."

Although we have discussed the question of undue influence, we do not find such question was submitted to the jury. Instruction No. 11, although not marked "given," is in a series which the abstract sets forth as given. A portion of that instruction reads as follows: "The only question in this case for you to decide is whether this instrument is the will of Mary H. Hughes and whether she, at the time of executing the same, was of disposing mind and memory and understood the particular business in which she was then engaged." This instruction was apparently intended to and did eliminate the question of undue influence.

Complaint is made that the court erred in allowing $300 attorney's fees, as costs for taking the deposition of a witness, which deposition was not used. The deposition was taken in pursuance with Rule 19 of the Supreme Court. An examination of the record

fails to disclose any report of the proceedings wherein this subject was considered by the court. The report of the proceedings fails to include a certificate of the trial judge that it contained all the evidence that was heard. Consequently, we must presume that sufficient evidence was heard to support the decision in this regard.

Other points are raised but we do not think they are in any sense controlling. As before stated, this is a case where some score of witnesses were heard and their testimony was about equally divided in favor of plaintiff and defendants. Many of the witnesses were doctors and nurses and much of their testimony was in direct opposition. This created a situation which was particularly one for a jury to determine they having seen the witnesses, observed their demeanor while upon the witness stand, were in a better position to judge as to their credibility and to decide wherein lies the preponderance of the evidence than is a court of review.

Having carefully reviewed the entire evidence, however, we are not prepared to say that the evidence does not preponderate in favor of the proponents of the will or that its weight is in favor of the contestants.

We think the evidence fully supports the verdict of the jury and for the reasons herein given the judgment of the superior court is hereby affirmed.

*Judgment affirmed.*

HEBEL and BURKE, JJ., concur.