People of State of Illinois, ex rel. J. Edward Day, Director of Insurance of State of Illinois, Petitioner-Appellee, v. Progress Insurance Association, a Reciprocal or Inter-Insurance Exchange, Respondent-Appellee, Justine F. McCarthy, Director of Insurance of State of Illinois, and as Liquidator of Progress Insurance Association, Petitioner-Appellee, Robert E. Gallagher, as Receiver of Progress, Incorporated, Appellee, Progress, Incorporated, and W. N. Lowe, Claimants-Respondents-Appellants.

Gen. No. 46,577.

First District, Second Division.

November 22, 1955.

Released for publication December 14, 1955.

Lyle, Havey & Gager, and Seyfarth and Atwood, all of Chicago, for appellants; Edward T. Havey, Karl Edwin Seyfarth, and Benton Atwood, all of Chicago, of counsel.

Sherman B. Lans, of Chicago, for Justine F. McCarthy; Fred A. Gariepy, of Chicago, for Robert E. Gallagher; John Spalding, of Chicago, of counsel.

JUDGE SCHWARTZ delivered the opinion of the court.

Progress, Incorporated and W. N. Lowe, its president and sole stockholder, appeal from an order deny-

ing their claim against Progress Insurance Association, an Illinois reciprocal insurance company which is in the process of involuntary liquidation. The principal issue involved is whether the prosecution of this claim is barred by a prior order (from which order no appeal was taken) finding that Progress, Incorporated was indebted to the Association, that it admitted its indebtedness in writing, that it was unable to pay its debts, and that therefore a receiver should be appointed for it. Progress, Incorporated was the attorney-in-fact for Progress Insurance Association, and since this decision in part turns on the relationship between insurance reciprocals and their attorneys-in-fact, we here briefly describe the nature of reciprocal insurance companies.

■■ A reciprocal insurance company is in essence an organization whose members have agreed to exchange insurance contracts with each other and thus distribute a loss. Since the members of such a reciprocal group may be numerous and widely scattered, it is necessary for practical operation that they designate some central authority to act for them. The statutes therefore provide that the reciprocal designate an attorney-in-fact who is given authority by each individual in the group to effect an exchange of the individual's insurance contract with the other members of the group. Ill. Rev. Stat. 1953, Ch. 73, Par. 674 [Jones Ill. Stats. Ann. 66.737]. The Illinois Insurance Code defines insurance companies as any entity or group of individuals engaging in "any kind of insurance or surety business, *including the exchanging of reciprocal or inter-insurance contracts between individuals, partnerships and corporations.*" Thus, a reciprocal is within the regulatory provisions of the Insurance Code. (Ill. Rev. Stat. 1953, Ch. 73, Par. 614 [Jones Ill. Stats. Ann. 66.677].) The attorney-in-fact for the reciprocal insurance company has been described as "the whole machinery, through which the

78

association functions." (Mosteiko v. National Inter Insurers Corp. of Chicago, 229 Ill. App. 153, 163 (1923).) See also Roach & Co. v. Harding, 348 Ill. 454 (1932) and Warfield-Pratt-Howell Co. v. Williamson, 233 Ill. 487 (1908).

On April 14, 1951, the Director of Insurance acting under the authority granted him in the Insurance Code petitioned for the liquidation of Progress Insurance Association (the Association). Progress, Incorporated (the attorney-in-fact) and Lowe, the sole stockholder, were named as respondents. The petition alleged that the Association had filed a false annual statement, including among other things the listing of $300,000 in United States Treasury bonds as unencumbered assets of the Association when, in fact, such bonds had been pledged as collateral for a note signed by Lowe; that the Association had accepted risks in excess of the ratio permitted by law; and that the policies issued by it failed to provide for contingent liability as required by statute. An answer to the petition was filed by the Association, the attorney-in-fact, and Lowe. On motion of the Director of Insurance the answer was stricken and on June 27, 1951, the trial court entered a decree of liquidation against the Association, reserving jurisdiction to take action with respect to all claims filed against it. No appeal was taken from this decree.

On November 30, 1951, Progress, Incorporated and Lowe filed with the Director, as liquidator of the Association, a claim against the Association for $384,049.05 for alleged unpaid commissions. The claim itself is not a part of the record in this appeal since neither the Director nor the appellants introduced it in evidence. The absence of the claim from the record is the basis of a motion made by appellees to affirm the judgment or dismiss the appeal and of a countermotion by appellants seeking to require the Director to file in this court a true copy of the claim. Various counter-sug-

gestions and other motions relating thereto were made. This raises a serious question of practice, but as we do not desire to dispose of the case on a technical point, we have considered the matter as if the claim had been introduced in evidence and our decision makes the ruling on these motions moot. For the record we have denied all the motions.

On February 21, 1952, the Director filed a second petition in which he prayed that a receiver be appointed for Progress, Incorporated. It set forth the relationship of Progress, Incorporated to Progress Insurance Association and alleged that the entire management of the affairs of the Association was under the control of the attorney-in-fact, including the supervision and auditing of all books and records. The petition, among other things, alleged that under the power of attorney signed by all the members of the Association, the attorney-in-fact was to receive *thirty-five percent* of all gross premiums; that it had paid itself commissions of $200,000 over and above this thirty-five percent; and that it had admitted in writing it owed this sum to the Association, *as evidenced by excerpts from the books of account maintained by it, which excerpts were attached as exhibits to the petition.* The petition further alleged that it was impossible for the Director to carry out his duties of liquidation of the Association unless a receiver were appointed for the attorney-in-fact. The petition prayed that the court either appoint a receiver pursuant to Sections 86 and 87 of the Illinois Business Corporation Act [Ill. Rev. Stats. 1953, Ch. 32, §§ 157.86, 157.87; Jones Ill. Stats. Ann. 32.088, 32.089] or, in the alternative, that the appointment of the receiver be pursuant to the inherent power of the court to grant such relief as ancillary to the liquidation decree previously entered. Appellant Lowe filed an answer on behalf of the attorney-in-fact, admitting certain allegations and denying others. The answer did not challenge the court's jurisdiction nor

80

did it make any claims that the Association was indebted to the attorney-in-fact.

The issue on the appointment of a receiver for the attorney-in-fact was heard on January 13, 1953, and the court found that the attorney-in-fact owed the Association over $200,000; that it had in writing admitted such indebtedness and that it was unable to pay its obligations as they matured in the ordinary course of business. The court thereupon appointed a receiver for Progress, Incorporated. *No appeal from that order was taken by appellants.* Later in this opinion when we consider the finality of that order we will set forth more fully its recitals and findings. The court subsequently entered an order granting the receiver leave to institute legal proceedings against appellant Lowe to recover any moneys owed by him to the attorney-in-fact.

After the receiver for the attorney-in-fact had been appointed, the Director presented his recommendations on the claims filed against the Association including the claim of the attorney-in-fact for $384,049.05 filed November 30, 1951. He recommended that the claim of Progress, Incorporated and/or Lowe be disallowed in its entirety. The objections to this recommendation filed by Progress, Incorporated were stricken but Lowe was given leave to file specific objections as an individual to the disallowance of the claim. On May 24, 1954, these objections were overruled and the court found that the Association was not indebted to Progress, Incorporated.

Following this, separate petitions to set aside the order of May 24, 1954, were filed by each of the appellants (Lowe signing the petition for Progress, Incorporated), alleging they had a meritorious claim against the Association and further alleging that the order appointing a receiver for the attorney-in-fact was void because it was beyond the jurisdiction of the court. The petitions prayed that the order of May 24,

1954, disallowing the claim against the Association be vacated, that the appointment of the receiver for the attorney-in-fact be declared void or, in the alternative, that the findings in the receivership order be declared not binding as to the claim against the Association. The petitions also prayed that such findings be declared not binding in the receiver's separate suit against Lowe which had been instituted to recover moneys due from him to the attorney-in-fact. On June 28, 1954, these petitions were denied in their entirety. This appeal is from the orders of May 24, 1954 and June 28, 1954, denying appellants' claim against the Association. We may now proceed to a discussion of the issue.

Two basic questions are presented, as follows:

1. Did the court have jurisdiction to enter a receivership order against the attorney-in-fact in the proceeding relating to the liquidation of the Association?

2. If it had jurisdiction, was the finding that the attorney-in-fact owed the Association more than $200,000 such an adjudication as would bar the attorney-in-fact from claiming in another proceeding that the converse was true and that the Association *owed it* money?

■■ Considering the first question, there can be no dispute that the Director could have brought a *separate* suit to have a receiver appointed for the attorney-in-fact pursuant to Section 86 of the Business Corporation Act. (Ill. Rev. Stat. 1953, Ch. 32, Par. 157.86.) If, as alleged by the Director, the attorney-in-fact was indebted to the Association, had admitted the indebtedness in writing, and was unable to pay its debt, the act authorized such receivership of the attorney-in-fact. Moreover, the functions of an attorney-in-fact are such as to bring it within the definition of Section 2(e) of Article I of the Insurance Code. (Ill. Rev. Stat. 1953, Ch. 73, Par. 614.) Accordingly, the

Director upon the allegations he has made could have sought liquidation or receivership of the attorney-in-fact at the same time he brought the original petition against the Association. Similarly, he could have instituted separate proceedings against the attorney-in-fact for liquidation or receivership under either the Insurance Code or the Corporation Act. The question thus becomes whether the Director, *as part of* the liquidation proceedings of the Association but *subsequent* to the entry of the liquidation order, could obtain a receivership for the attorney-in-fact in order to effectuate his liquidation of the Association.

Appellants contend that the decree of liquidation against the Association having been entered pursuant to the special statutory jurisdiction given the court by the Insurance Code, the court's jurisdiction was limited by that statute and the court could not in that same proceeding entertain a petition for receivership under the Business Corporation Act. They cite Calkins v. Calkins, 229 Ill. 68 (1907) as the leading case for this doctrine. There, our Supreme court held that a defendant in a will contest could not file a cross-bill to construe the will as an equitable assignment. The court said that the will contest was statutory and that the lower court's jurisdiction was limited to the words of the statute.

An examination of later cases reveals holdings contrary to that in the Calkins case. Liberalized rules of practice with respect to joinder of actions and the acceptance of the principle that wherever possible the entire controversy ought to be settled in one lawsuit have prevailed over the more technical holding in the Calkins case. In Hitchcock v. Hitchcock, 373 Ill. 352 (1940), our Supreme court affirmed a decree of divorce and also granted partition of real estate although the same argument was there made as appellants make in the instant case. The court there said, p. 356:

83

"Both complaints grow out of the same difficulties. The parties are the same and the various causes set forth in the complaint may be more conveniently tried in a single suit, thus avoiding multiplicity of suits."

In Stephens v. Collison, 249 Ill. 225, the court upheld the defendant's right in a will contest to join separate defenses as to the validity of the will and as to the relationship of the plaintiff to the deceased. The court distinguished Calkins v. Calkins, supra. In Anderson v. Anderson, 293 Ill. 565 (1920) the court permitted the plaintiff to file a bill in equity seeking to set aside a will on the ground of fraud and at the same time to enforce a trust agreement, saying that the Calkins case had been modified by the Stephens case.

■ Cases have arisen under the Insurance Code where the same argument has been advanced by litigants as in the instant case. In all such cases brought to our attention the courts have rejected this narrow view of their jurisdiction to take action concomitant with or ancillary to the primary jurisdiction conferred by the words of the Insurance Code. In People ex rel. Lowe v. Marquette Nat. Fire Ins. Co., 351 Ill. 516, 531 (1933) the court said in such a case

"To deprive a court of the power to execute its decrees is to essentially impair its jurisdiction. Jurisdiction in a court of chancery to enter an order or render a decree includes the power to do that necessary to its execution."

More recently it was argued that the court did not have the power to approve the accounts of a receiver in a case arising under the Insurance Code on the ground that the Code did not provide for such review of an administrative action by the court. The argument was rejected, the court saying (Miller v. Central Mut. Ins. Co., 299 Ill. App. 194, at p. 205):

". . . the powers of the court in . . . insurance liquidation proceedings are not strictly limited to those

84

expressly given by statute, but should be sufficiently broad to permit the effective liquidation of the company in the proceeding brought before the court for that purpose."

■ The above language aptly covers the case at hand. The interwoven affairs of the Association and the attorney-in-fact and the alleged indebtedness of the attorney-in-fact to the Association made impossible an effective liquidation of the Association without a receivership for the attorney-in-fact. Such a receivership would have been proper as part of the relief granted under the original liquidation petition. That it was granted under a subsequent petition and under the authority of the Business Corporation Act rather than the Insurance Code appears to us inconsequential and not a sound basis for error. A court of equity has the power to make its proceedings effective even where it is acting in the first instance under statutory authority, and the court can accordingly draw on whatever legal authority it may find to accomplish such end. It takes years and even decades to complete receivership proceedings for defunct insurance companies and this should not be further prolonged by making the liquidation of reciprocals more complicated.

■ Having concluded that the lower court had jurisdiction to enter the receivership order in question, it must follow that the order was a final adjudication of those facts essential to such an order, one of those being that the attorney-in-fact was indebted to the Association. Section 86 of the Business Corporation Act empowers courts of equity to liquidate the assets and business of a corporation in an action by a creditor when it is made to appear, among other things, that the corporation has admitted in writing that the claim of the creditor is due and owing and that the corporation is unable to pay its debts and obligations as they mature in the regular course of business. (Ill. Rev. Stat., 1953, Ch. 32, Par. 157.86.)

As we have before stated, the petition for the appointment of a receiver for Progress, Incorporated contained the necessary averment of admission in writing of the debt and the further averment of inability to pay. The answer denied the indebtedness, the admission in writing, the inability to pay, the necessity for the appointment of a receiver, and other material allegations set forth in the petition. The order of January 13, 1953, appointing a receiver for Progress, Incorporated recites that the cause came on to be heard on the petition and answer; that the court heard the arguments of counsel and certain testimony in behalf of the parties, and then found that Progress, Incorporated, as attorney-in-fact, had the sole and exclusive managerial authority over the affairs of the Association; that the order for liquidation of the Association dated June 27, 1951, recited that the petition asking for liquidation of the Association stood admitted; that this admission was binding not only on the Association but also on Progress, Incorporated because the election to stand on the answer was made on behalf of the Association by Progress, Incorporated; that the false listing of the bonds referred to was made with intent to deceive and in order to balance on the books of the Association an overdraft by Progress, Incorporated on its commission account; that this amounted to approximately $200,000 and that this debt of Progress, Incorporated was "admitted in writing by the books of account of the said Association as kept by the respondent, Progress, Incorporated. . . ." The court further found that Progress, Incorporated was virtually without assets and unable to meet its obligations. It was on the basis of these findings that the court appointed a receiver. There could hardly be a decree more conclusive and decisive than this with respect to the issues involved.

It is urged that appellants were not given an opportunity to present their evidence. No transcript

or report of the proceedings which took place at the time the trial court entered the order is before us. We must assume that the court had before it evidence adequate to support its findings. People v. Bagdonas, 372 Ill. 530 (1940); Buhai v. West Side Trust & Savings Bank, 283 Ill. App. 73 (1935); Kilpatrick v. Schmitt, 303 Ill. App. 15 (1939); Addante v. Pompilio, 303 Ill. App. 172 (1940); Hughes v. Williams, 300 Ill. App. 108 (1939); Sheean v. Beil, 300 Ill. App. 364 (1939). Copies of applicable portions of the books of account referred to were attached to the petition. The adequacy of the evidence, after the trial court's decree, could only have been tested by a direct appeal.

■ Appellants argue that the receivership order was not final in that it appointed a receiver *pendente lite*. In a sense, all receiverships are *pendente lite* because ultimately the suit will be dismissed and the receiver discharged. But a custodial receiver appointed merely to hold property in dispute between litigants pending a decision by the court is a very different matter from that of a receiver appointed pursuant to Section 86 of the Business Corporation Act. It is true that the order in question does not specifically describe the receiver as a "liquidating" receiver and does not expressly find that Progress, Incorporated should be irrevocably put into the process of extinction. But the issues decided by the court were those required to support a liquidation order and it is clear that was what the court intended. Failure to appeal made the order conclusive on the parties. It cannot be attacked by what is in effect a collateral proceeding. Dishinger v. Bon Air Catering, Inc., 336 Ill. App. 557, 566; Blanchard Bro. & Lane v. Gay Co., 289 Ill. 413, 420.

■ Appellants finally urge that even though there was a final and binding adjudication that the attorney-in-fact owed the Association money, nevertheless such an adjudication was no bar to their claim against the Association. They argue that the earlier adjudication

was the result of "limited bookkeeping entries," and that they should now be given the right to show their set-offs. Any set-off the attorney-in-fact was entitled to could and should have been presented to the court at the time the order for receivership was being considered. Appellants cannot now be heard to contradict those findings.

We have considered the other points raised by appellants and find they have no merit. All pending motions are denied.

Orders affirmed.

McCORMICK, P. J. and ROBSON, J., concur.